

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

Hua Su

Zhenying Huang

A      S

          Plaintiffs,

                  -

against-

THE CITY OF NEW YORK, Sergeant Stehen Ennis,
RADOSLAW TUROWSKI, Officer Nicholas A. Ortega
Officer Nadder A. Munassar Officer Tracy R.
Metoo, Officer Kris S. Lee, Officer Guosheng Du
Officer Zhuobin Chen,  Officer Kristy
M.Rashevskiy, Officer Nicholas Rosado
EMERGENCY  MEDICAL  TECHNICIAN
JOHN DOES #1-20,JANE DOES#1-10

             Defendants.

-----------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 2 5 2025 ★

BROOKLYN OFFICE

Complaint for Violation of Civil Rights

1:25-CV-00477-PK

**JURY TRIAL DEMANDED**



RECEIVED
JUN 25 2025
PRO SE OFFICE

REC'D IN PRO  E OFFICE
JUN 25 2.  4:15

Plaintiffs, Zhenying Huang,Hua Su, allege upon information and belief as follows:

**NATURE OF THE ACTION**

1.     This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the common law of the State of New York, against the individual police officers identified herein and their employer, the City of New York.

## PARTIES, VENUE AND JURISDICTION

2.     Plaintiff Zhenying Huang ("Plaintiff Huang") was at the time of the incidents giving rise to this action, a resident of Kings County, State of New York.

1、     Plaintiff Hua Su ("Plaintiff Su") was at the time of the incidents giving rise to this action, a resident of Kings County, State of New York.

2、     The Incident occurred in Kings County, State of New York.

3、     Defendant City of New York is, and was at the time of the incidents giving rise to this action, a municipal corporation duly organized under, and existing by virtue of, the laws of the State of New York.

4、     Defendant Sgt. Stephen Ennis is a police officer employed by the New York City Police Department (the "NYPD") – and thus, Defendant City of New York – with shield number 1186 and actual place of business at the NYPD's 72th Precinct at the time of the Incident ("Ennie").

5、     Defendant RADOSLAW TUROWSKI is a police officer employed by the New York City Police Department (the "NYPD") – and thus, Defendant City of New York – with shield number 3139 and actual place of business at the NYPD's 72th Precinct at the time of the Incident (" TUROWSKI").

6、     Defendant P.O. Nicholas A. Ortega is a police officer employed by the NYPD – and thus, Defendant City of New York – with shield number

13565 and actual place of business at the NYPD's 72th Precinct at the time of the Incident ("Ortega").

7、 Defendant P.O. Nadder A. Munassar is a police officer employed by the NYPD – and thus, Defendant City of New York – with shield number 4980 and actual place of business at the NYPD's 72th Precinct at the time of the Incident ("Munassar").

8、 Defendant P.O. Kris S. Lee is a police officer employed by the NYPD – and thus, Defendant City of New York – with shield number 31167 and

9、

10、 actual place of business at the NYPD's 72th Precinct at the time of the Incident ("Lee").

11、 Defendant P.O. Tracy R. Metoo is a police officer employed by the NYPD – and thus, Defendant City of New York – – with shield number 20090 and actual place of business at the NYPD's 72th Precinct at the time of the Incident ("Metoo").

12、 Defendant P.O. Guosheng Du is a police officer employed by the NYPD – and thus, Defendant City of New York – with shield number 14727 and actual place of business at the NYPD's 72th Precinct at the time of the Incident ("Du").

13、 Defendant P.O. Kristy M.Rashevkiy is a police officer employed by the NYPD – and thus, Defendant City of New York – – with shield number 24720 and actual place of business at the NYPD's 72th Precinct at the time of the Incident ("Rashevkiy").

14、  Defendant P.O. Zhuobin Chen is a police officer employed by the NYPD – and thus, Defendant City of New York – with shield number 3551 and actual place of business at the NYPD's 72th Precinct at the time of the Incident ("Chen").

15、  Defendant P.O. Nicholas Rosado is a police officer employed by the NYPD – and thus, Defendant City of New York – with shield number 18688 and actual place of business at the NYPD's 72th Precinct at the time of the Incident ("Rosado").

16、  Defendant Jane Does 1-10, upon information and belief, were, at the time of the Incident, employed by the NYPD – and thus Defendant City of New York – as police officers or other members of the service (the "John Doe Defendants").

17、  Defendant John Does 1-20, upon information and belief, were, at the time of the Incident, employed by the NYPD – and thus Defendant City of New York – as police officers or other members of the service (the "John Doe Defendants").

18、  Defendant Ennis, Defendant TUROWSKI, Defendant Ortega, Defendant Munassar, Defendant Lee, Defendant Metoo, Defendant Du, Defendant Defendant Rosado ,Defendant Rashevkiy and the John/Jane Does Defendants are referred to herein, collectively, as the "Individual Defendants."

14、  Plaintiffs have a video recording of the Incident and extracted color photographs of the Individual Defendants from the recording, which

would presumably include, but not be limited to, Defendant Ortega, Defendant Munassar, Defendant Lee, Defendant Metoo,

17. Plaintiff expects that the identity of all John/Jane Does Defendants will be discovered during the course of this litigation

18. At all relevant times, and during the time of the incidents giving rise to this action, the Individual Defendants were acting within the scope of employment.

19. At all relevant times, and during the time of the incidents giving rise to this action, the Individual Defendants were acting within the scope of employment.

20. At all relevant times, and during the time of the incidents giving rise to this action, the Individual Defendants were acting under color of state law.

21. The Individual Defendants and Defendant City of New York are referred to herein, collectively, as "Defendants.

22. At all relevant times hereinafter mentioned, defendants John Does One through Ten were individuals employed by the City of New York as members of the NYPD whose actual and complete identities are not known to plaintiffs at this time. The Doe defendants are sued herein in their individual and official capacities.

23. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. §1983.

24、 EMERGENCY MEDICAL TECHNICIAN ("EMTs")  were At all    times relevant here in an employee of the  FDNY.

25、 The Defendant NYPD officers and EMTs are being sued in their individual and official  capacities

26、 This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. §1983.

27、 Under 28 U.S.C. § 1391(b) and (c) venue is proper in the Eastern District of New York.

## FIRST CAUSE FOR ACTION

## <u>FALSE ARREST UNDER 42 U.S.C. § 1983</u>

28. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

29. As a result of defendants' aforementioned conduct, each of the plaintiffs was subjected to an illegal, improper and false arrest by the defendants and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege or consent.

30. As a result of the foregoing, plaintiffs' liberty was restricted for an extended period of time, and they were put in fear for his safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

## SECOND CLAIM FOR RELIEF
## <u>EXCESSIVE FORCE UNDER 42 U.S.C. §1983</u>

31. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

32. The level of force employed by defendants was objectively unreasonable and in violation of each of the plaintiff's constitutional rights.

33. As a result of the foregoing, the plaintiffs sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of their constitutional rights.

## THIRD CLAIM FOR RELIEF
## <u>UNLAWFUL SEARCH UNDER 42 U.S.C. § 1983</u>

34.    Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

35.    Defendants searched plaintiffs in the absence of any individualized reasonable suspicion that plaintiffs were concealing weapons or contraband.

36. As a result of the foregoing, plaintiffs were subjected to an illegal and improper search.

37. The foregoing unlawful search violated plaintiffs' constitutional right to privacy, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

**FOURTH CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**

38. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

39. Defendants misrepresented and falsified evidence before the District Attorney.

40. Defendants did not make a complete and full statement of facts to the District Attorney.

41. Defendants withheld exculpatory evidence from the District Attorney.

42. Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiffs.

43. Defendants lacked probable cause to initiate criminal proceedings against plaintiffs.

44. Defendants acted with malice in initiating criminal proceedings against plaintiffs.

45. Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiffs.

46.    Defendants lacked probable cause to continue criminal proceedings against plaintiffs.

47.    Defendants acted with malice in continuing criminal proceedings against plaintiffs.

48.    Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

49.    The charges against the plaintiff [HUANG], were terminated in those plaintiffs' favor.

50.    As a result, the individual defendants caused plaintiff [HUANG], to be maliciously prosecuted.

51.    As a result of the foregoing, plaintiffs sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of their constitutional rights.

52.    As a result of the foregoing, plaintiffs sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights.

## FIFTH CLAIM FOR RELIEF
### MONELL

53.    Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

54. Not only has the municipal defendant effectively ratified such misconduct by NYPD members generally, the foregoing violations of plaintiffs' federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to the defendant City of New York, amounting to deliberate indifference to the constitutional rights of persons, including plaintiff, who are subjected to excessive force and other misconduct by officers the NYPD know have a demonstrated history of such misconduct.

55. Upon information and belief, the municipal defendant was on notice prior to September 30, 2023, that the individual defendants had a history of engaging in misconduct. Notwithstanding such notice, the NYPD failed to take any meaningful supervisory action or otherwise reasonably respond to the defendants' conduct, covered up their further misconduct, and left the defendants in place to continue their pattern and practice of unconstitutional behavior.

56. Upon information and belief, each of the individual defendants has also amassed a number of civilian complaints for a variety of misconduct.

57. Notwithstanding the litany of complaints concerning the defendants' prior misconduct, the City of New York continued to employ the defendants without any change in their status.

58. Moreover, there were, on information and belief, no meaningful investigations into these complaints, and certainly no attempt whatsoever by the

NYPD or the City of New York to examine the defendants' general conduct towards the public. Put differently, the City was aware of this pattern of excessive force by some or all of the individual defendants, yet, upon information and belief, made no effort to modify, increase, supplement, or otherwise intensify the defendants' supervision, or otherwise ensure that they would not engage in such blatant misconduct.

59.     The City of New York's refusal to impose any discipline, to conduct any meaningful investigation, or to otherwise express even the slightest scintilla of concern that the individual defendants were prone to unnecessary and unjustifiable violence was a clear and unequivocal endorsement of the defendants' misconduct that could only be understood as a ratification of this past misconduct that encouraged the defendants to continue to engage in such misuses of force.

60.     Such actions by the City of New York are a reflection of the municipal defendant's repeated an untenable abdication of its responsibility to supervise and discipline its employees, and to otherwise protect the public from officers the NYPD knows are a threat to the public's safety and well being, and evince a complete disregard and deliberate indifference to the rights and welfare of those with whom these officers, and the defendants in particular, interact.

61.     These actions further reflect a policy, custom, and practice, or a ratification through a demonstrated failure to act to curtail such behavior, and thus the aforesaid policies, procedures, regulations, practices and/or customs

46.    Defendants lacked probable cause to continue criminal proceedings against plaintiffs.

47.    Defendants acted with malice in continuing criminal proceedings against plaintiffs.

48.    Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

49.    The charges against the plaintiff [HUANG], were terminated in those plaintiffs' favor.

50.    As a result, the individual defendants caused plaintiff [HUANG], to be maliciously prosecuted.

51.    As a result of the foregoing, plaintiffs sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of their constitutional rights.

52.    As a result of the foregoing, plaintiffs sustained, *inter alia*, loss of liberty, bodily injuries, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights.

## FIFTH CLAIM FOR RELIEF
## MONELL

53.    Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

54.    Not only has the municipal defendant effectively ratified such misconduct by NYPD members generally, the foregoing violations of plaintiffs' federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to the defendant City of New York, amounting to deliberate indifference to the constitutional rights of persons, including plaintiff, who are subjected to excessive force and other misconduct by officers the NYPD know have a demonstrated history of such misconduct.

55.    Upon information and belief, the municipal defendant was on notice prior to September 30, 2023, that the individual defendants had a history of engaging in misconduct. Notwithstanding such notice, the NYPD failed to take any meaningful supervisory action or otherwise reasonably respond to the defendants' conduct, covered up their further misconduct, and left the defendants in place to continue their pattern and practice of unconstitutional behavior.

56.    Upon information and belief, each of the individual defendants has also amassed a number of civilian complaints for a variety of misconduct.

57.    Notwithstanding the litany of complaints concerning the defendants' prior misconduct, the City of New York continued to employ the defendants without any change in their status.

58.    Moreover, there were, on information and belief, no meaningful investigations into these complaints, and certainly no attempt whatsoever by the

NYPD or the City of New York to examine the defendants' general conduct towards the public. Put differently, the City was aware of this pattern of excessive force by some or all of the individual defendants, yet, upon information and belief, made no effort to modify, increase, supplement, or otherwise intensify the defendants' supervision, or otherwise ensure that they would not engage in such blatant misconduct.

59.    The City of New York's refusal to impose any discipline, to conduct any meaningful investigation, or to otherwise express even the slightest scintilla of concern that the individual defendants were prone to unnecessary and unjustifiable violence was a clear and unequivocal endorsement of the defendants' misconduct that could only be understood as a ratification of this past misconduct that encouraged the defendants to continue to engage in such misuses of force.

60.    Such actions by the City of New York are a reflection of the municipal defendant's repeated an untenable abdication of its responsibility to supervise and discipline its employees, and to otherwise protect the public from officers the NYPD knows are a threat to the public's safety and well being, and evince a complete disregard and deliberate indifference to the rights and welfare of those with whom these officers, and the defendants in particular, interact.

61.    These actions further reflect a policy, custom, and practice, or a ratification through a demonstrated failure to act to curtail such behavior, and thus the aforesaid policies, procedures, regulations, practices and/or customs

of the municipal defendant were, collectively and individually, a substantial factor in bringing about the aforesaid constitutional violations by the individual defendants.

62.     The City's abdication of its duty to supervise its police officers, and its tacit, if not overt, endorsement of excessive force and similar misconduct, reflects the City's deliberate indifference to the established risks that such conduct poses to the public at large.

63.     The City's failure to act in the fact of overwhelming evidence that the defendants were prone to misconduct against civilians is evidence of its deliberate indifference to the individual defendants' demonstrated pattern of behavior, and the very real risk that they would continue to engage in constitutional violations, such as the assault that they eventually committed against plaintiff.

64.     By reason thereof, the municipal defendant has violated 42 U.S.C. § 1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, and the loss of his constitutional rights.

**SIXTH CLAIM FOR RELIEF**
**FAILURE TO INTERVENE**

65.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

66.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an

opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

67.   Accordingly, the defendants who failed to intervene violated the Fourth, Fifth and Fourteenth Amendments.

68.   As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## SEVENTH CLAIM FOR RELIEF
## DENIAL OF CONSTITUTIONAL RIGHT TO FAIR TRIAL

69.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

70.   The individual defendants created false evidence against Plaintiffs.

71.   The Individual defendant forwarded false evidence to prosecutors in the Kings County District Attorney's office.

72.   In creating false evidence against Plaintiffs, and in forwarding false information to prosecutors, the individual defendants violated Plaintiffs' constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

73.   As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs requests that this Court:

1. **Monetary Damages** – Compensation for physical, emotional, and economic harm caused by Defendants' actions.

2. **Punitive Damages** – For willful, malicious, or reckless misconduct of Defendants.

3. **Declaratory Judgment** – A declaration that the actions of Defendants violated Plaintiffs' constitutional and federal rights.

4. **Permanent Injunction** – Prohibiting Defendants and their agencies from engaging in similar unlawful conduct in the future.

5. **Institutional Reform** – Court-ordered structural reforms within NYPD and ACS to prevent future misconduct.

6. **Expungement of Criminal Record** – Full expungement of all charges wrongfully brought against Plaintiffs.

7. **Public Apology** – An official apology from responsible agencies and individuals.

8. **Dismissal of Charges** – A court order requiring the dismissal of all charges related to the wrongful arrest and prosecution.

9. **Official Certificate of Rebecca's Death** – Issuance and acknowledgment of the death certificate for Rebecca.

10. **Access to FOIL Records** – Full access to all relevant records and evidence under the Freedom of Information Law.

11. **Internal Disciplinary Action** – A mandate for disciplinary measures against responsible personnel.

12. **Sanctions Against Assigned Counsel** – Investigation and sanction of court-appointed counsel for misconduct or negligence.

13. **Disclosure of Training & Complaint Records** – Requiring NYPD and ACS to disclose relevant personnel records.

14. **Independent Oversight Mechanism** – Establishment of an external body to monitor NYPD and ACS accountability.

15. **Protective Order** – Limiting future contact or harassment by any named Defendants against Plaintiffs.

16. **Investigation into Rebecca's Death** – A formal, independent investigation into the circumstances surrounding her death.

17. **Municipal Liability Declaration** – A finding that the City of New York is institutionally liable for the harms alleged.

18. **Psychological Support & Assistance** – Access to trauma recovery and mental health services for the family.

19. **Restoration of Immigration Status** – Relief seeking to restore Plaintiffs' legal immigration standing affected by the prosecution.

20. **Right to Proceed Anonymously** – Court protection allowing Plaintiffs to proceed anonymously if necessary to prevent retaliation.

## JURY DEMAND

Plaintiffs hereby demands a jury trial.

DATED:      June 20, 2025
            NEWARK DE19711

_Hua Su   Zhenying Huang_

TO:         All Defendants
            Corporation Counsel of the City of New York

# Exhibit A: Timeline of Key Events

| Date | Event | Involved Parties | Notes |
|------|-------|-----------------|-------|
| December 21, 2022 | Initial police report, Officer Du responds | OfficerNYPD | Failed to intervene in family conflict |
| October 16, 2023 | Child slips on intentionally soapy floor | Elderly woman of the Lian family | Dangerous setup led to child's fall |
| October 24, 2023 | Meeting with Officer Du | Du | Suggested calling 911 more often |
| Evening of October 27, 2023 | Multiple 911 calls ignored, unborn baby Rebecca died | NYPD | Prenatal exam normal; heartbeat stopped |
| Morning of October 28, 2023, ~7:00am | Su forcibly dragged from 2nd floor by Officer 4980, fingers fractured | NYPD Officer 4980 | Excessive force; no incident report filed |
| Morning of October 28, 2023 | White-uniformed female officer (likely Precinct Commander) promised reports | Suspected Precinct Commander Jane Doe | Promise made at hospital, never fulfilled |
| Afternoon of October 28, 2023 | Property Damage | NYPD ,Lian minai | Police Indifference |
| Morning of October 28, 2023 | Lian Caidong starts fire on stove after mentioning child's death | Lian Caidong | Su called 911 fire; FD cut gas; NYPD did not respond |
| Evening of October 28, 2023 | Second attack by Lian family, victim arrested instead | Officers 13565, 20090, etc. | Ignored poisoning and violence; wrongful arrest |
| October 29–30, 2023 | Held at 72nd Precinct and Central Booking | NYPD female officers, jail staff | Denied food, restroom access; physical distress ignored |
| October 30, 2023 | Restraining order signed under confusion | Court, public defender | Signed while physically/mentally impaired |
| October 31, 2023 | ACS misled & tracked family at hotel | ACS agent | Claimed both parents restrained; contacted child's school |
| November 1, 2023 | Su choked and dragged out of 72nd Precinct | Officers 18688, 20090, others | Assault for attempting to file complaint |
| November 2, 2023 | Complaint submitted at CCRB | CCRB | Photos and case number provided |

| November 3, 2023 | Officer Du discourages lawsuit, urges family to leave | Du | "You don't understand America. Just move out." |
|---|---|---|---|
| April 5, 2024 | Phone hearing (approx. 3 hours) held, no results | CCRB → IAB? | Promised update never provided |

**Attempted Endangerment and Deliberate Hazard by Resident on October 16, 2023**

**Statement of Facts**

On or about October 16, 2023, Plaintiff Huang returned home with her minor daughter after school and a brief stop at a neighborhood playground. Plaintiff's husband Su went to buy groceries while Plaintiff took their daughter upstairs.

As her daughter ascended the stairs ahead of her, Plaintiff—then nearly five months pregnant—suddenly heard her child slip and fall. The child cried and exclaimed that the floor was unusually slippery. Upon reaching the landing, Plaintiff discovered the tiled hallway surface was covered in a film of soapy foam, resembling detergent or laundry powder.

Recognizing the extreme risk of injury, especially for children and pregnant individuals, Plaintiff verbally told an elderly resident (previously involved in a 2022 incident) that such conduct was dangerous and unacceptable. The woman began shouting and hurling insults in response.

Out of fear for her safety and to document the incident, Plaintiff began recording video on her phone. Upon realizing she was being recorded, the woman retreated and left the area.

Plaintiff Huang then messaged her husband Su who advised her to stay calm, avoid confrontation, and document the scene. Plaintiff Huang took photographs and called 911 at approximately 6–7 PM. However, NYPD officers did not arrive until roughly 11 PM.

The officer did not enter the residence but remained outside the door, stating that the matter should be handled by the landlord. At the time, Lian Minai had already returned home around 7 p.m. Upon seeing the floor covered in foam, she questioned her mother and immediately began mopping the floor to cover up the scene. When the police arrived, she deliberately approached them with a concerned attitude, pretending to innocent

**Cause of Action**

- Failure to Investigate

- Deliberate Indifference to the Safety of Children and Pregnant Women

- Deliberate Inaction in the Face of Attempted Murder or Serious Bodily Harm

- Equal Protection Violation / Selective Enforcement Favoring Co-Resident

- Municipal Pattern of Tolerance Toward Recidivism by Non-Prosecuted Offenders (2022 Case)

## FACTS——Morning on Oct 28,2023

1. On or about October 28, 2023, at approximately 3:00 a.m., Plaintiff's (Su's) wife informed him that their infant child had passed away.

2. At approximately 5:40 a.m., Plaintiff Su placed a 911 call to the NYPD Internal Affairs Bureau to file a formal complaint regarding prior misconduct by officers. The dispatcher, identifying himself (phonetically) as "Brevetti," assured Plaintiff that investigators would be dispatched shortly.

3. Plaintiff Su remained in the second-floor living room reviewing relevant police body camera footage in preparation for the expected investigators.

4. Instead of the promised investigators, NYPD officers arrived in response to a separate false report made by Lian Minai, who accused Plaintiff of causing a disturbance and harassment.

5. Upon arrival, NYPD Officer Badge Defendant Munassar Munassar forcibly removed Plaintiff from his home, dragging him from the second-floor living room to the street level, causing fractures to the middle and ring fingers of his left hand.

6. Defendant Munassar Munassar had previously threatened Plaintiff around midnight on October 27, stating, "If you call the police again, I'll arrest you."

7. Despite Plaintiff's peaceful conduct and his explanation that he was awaiting investigators to review video evidence, officers continued to escalate the situation. When Plaintiff objected and questioned the lack of police response following the death of his child, his legitimate grief and outrage were met with indifference and physical aggression.

8. Plaintiff and his wife had made a reasonable request for police documentation and a protective order against Lian Minai and her family to safeguard their surviving child. In response, Defendant Chen acknowledged the promise of two reports but then claimed Plaintiff was emotionally unstable and attempted to have him involuntarily hospitalized.

9. Plaintiff, emotionally distressed but coherent, told the officers in English: "My baby is died! If you're going to take me, I need to bring my daughter with me. I cannot leave her here alone." One officer briefly showed empathy, and Plaintiff was not removed.

10. Later that morning, Plaintiff overheard Lian Caidong speaking on the phone with Lin Qin, referring to the child's death. Upon seeing Plaintiff, Lian intentionally set fire to the kitchen stove, then continued his phone call while the fire spread.

11. Plaintiff Su immediately called 911 again to report the fire and requested a joint police and emergency response. Although firefighters arrived quickly and successfully extinguished the fire by removing the stove and shutting off the gas valve, NYPD officers again failed to respond to the emergency call.

## CAUSES OF ACTION

### First Cause of Action

42 U.S.C. § 1983 – Excessive Force / Unreasonable Seizure (Fourth Amendment Violation)
Defendant Munassar Officer Defendant Munassar Munassar, acting under color of state law, used excessive and unjustified force against Plaintiff by forcibly dragging him from his residence without probable cause or lawful justification, resulting in physical injury. This conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

### Second Cause of Action

42 U.S.C. § 1983 – Deliberate Indifference to Medical and Emotional Crisis (Fourteenth Amendment Violation)
Despite knowledge that Plaintiff had just lost a child and was in emotional distress, NYPD officers failed to treat him with basic human decency, attempted to involuntarily remove him without medical necessity, and ignored repeated calls for assistance. Their actions demonstrated deliberate indifference to Plaintiff's constitutional rights and safety.

### Third Cause of Action

Failure to Respond to Emergency / Denial of Equal Protection (Fourteenth Amendment)
On multiple occasions, including during the fire incident, NYPD

officers failed to respond to 911 calls made by Plaintiff, while responding swiftly to calls made by others against Plaintiff. This disparity in treatment constitutes selective enforcement and a violation of Plaintiff's right to equal protection of the laws.

### Fourth Cause of Action

Battery and Assault (Under New York State Law)

Officer Defendant Munassar Munassar's physical assault of Plaintiff, including the violent dragging from the second floor resulting in finger fractures, constitutes battery under New York law. The threat and show of force without justification also constitute assault.

### Fifth Cause of Action

Negligent Hiring, Training, and Supervision (Against NYPD / City of New York)

The NYPD, through the City of New York, failed to properly train, supervise, and discipline Officer Defendant Munassar Munassar and other involved officers, directly resulting in constitutional and physical harm to Plaintiff.

### Sixth Cause of Action

Intentional Infliction of Emotional Distress (Under New York State Law)

The pattern of threats, violence, abandonment, and psychological manipulation—especially in the immediate aftermath of the death of Plaintiff's child—constitutes outrageous conduct intentionally inflicted to cause emotional distress.

### Seventh Cause of Action

Negligence / Gross Negligence (Failure to Act in Emergency, Under New York Law)

Defendant Munassars, including the NYPD officers and the City of New York, owed Plaintiff a duty of care to act upon emergency reports and to provide police assistance in life-threatening or hazardous situations, including Plaintiff's 911 reports of child death and fire. Their repeated failure to respond to emergency calls—despite having knowledge of the circumstances—constitutes gross negligence, directly resulting in further harm, risk to life, and emotional trauma to

Plaintiff and his family.

### Eighth Cause of Action

Obstruction of Justice / Abuse of Process (42 U.S.C. § 1983 and State Law)

By refusing to investigate Plaintiff's formal complaint to Internal Affairs, ignoring video evidence, failing to preserve or document reports, and instead retaliating against Plaintiff for calling 911, Defendant Munassars obstructed justice and abused lawful procedures for improper purposes. This includes their refusal to produce promised reports, attempts to mischaracterize Plaintiff as mentally unstable, and threatening to arrest him for lawful conduct.

### Ninth Cause of Action

Abuse of Authority and Retaliation (42 U.S.C. § 1983 – First Amendment Retaliation)

Plaintiff exercised his protected right to petition the government for redress of grievances, including contacting Internal Affairs and emergency services. In response, Officer Defendant Munassar Munassar and others retaliated with threats, use of force, attempted forced hospitalization, and neglect of Plaintiff's urgent reports. This pattern of retaliation for protected speech and whistleblowing constitutes a violation of the First and Fourteenth Amendments.

### Tenth Cause of Action

Failure to Provide Public Records / Violation of FOIL and Due Process

Defendant Munassars refused or failed to provide incident reports, bodycam footage, and other public records requested by Plaintiff in connection with life-threatening incidents involving his children and household. Despite promises from officers and clear relevance to Plaintiff's rights and safety, the NYPD did not issue the promised reports. This refusal violates Plaintiff's rights under the New York Freedom of Information Law (FOIL) and procedural due process protections under the Fourteenth Amendment.

**Facts—Afternoon on October 28 Factual Allegation —[Property Damage, and Police Indifference]**

On the afternoon of her release from the hospital, approximately 2:00 PM, Plaintiff Huang returned home physically weak and emotionally devastated by the recent loss of her unborn daughter. Upon arrival, she discovered that members of the Lian family—who had previously threatened and contributed to the traumatic chain of events—had continued to verbally abuse her and had destroyed household property.

Plaintiffs immediately called 911, urgently reporting the ongoing threat and property damage, and specifically informed dispatch of her medical condition and the loss of her child. Despite the severity of the situation, police response was significantly delayed.

When Plaintiff Huang exited the building with her three-year-old daughter to seek help, she saw an NYPD patrol car parked nearby, with officers remaining inside. Only after Plaintiff directly approached and waved them down did the officers follow her upstairs.

Upon reaching the scene, officers ignored the visible property damage and the Plaintiff's emotional and physical condition. After a brief conversation with the other party, they left without taking any formal report or action. The officers' conduct demonstrated deliberate indifference, failure to intervene, and a willful disregard for Plaintiff's rights and safety.

**FACTUAL ALLEGATIONS——About Defendant Du**

In 2022, after a traumatic police interaction involving the same hostile co-residents, Officer Du discouraged Plaintiffs from documenting future threats and falsely informed them that official reports could be obtained at police headquarters for $20, which was later found to be untrue;

• On October 24, 2023, Plaintiffs voluntarily visited the precinct and requested help from Officer Du, warning of escalated danger. He offered no documentation, and instead dismissively said: "I know your case, just keep calling 911 or move out. Going to court helps your moral position."

During Plaintiff's unlawful detention on October 27–30, she saw Officer Du at the precinct and reached out for help. He ignored her entirely;

• On November 3, 2023, when Plaintiff's Su visited the precinct and referenced CCRB complaints and internal reviews, Officer Du responded with sarcasm and coercion: "I don't want promotion anyway. You people don't understand America. If you ask me, stop the lawsuit and just leave the country."

These acts, taken cumulatively and under color of law, violated Plaintiffs' rights under:

• the First Amendment, by attempting to chill their right to petition the government and discourage legal action;

• the Fourteenth Amendment, by denying equal protection, due process, and access to redress;

• and the general duties of public safety officers, by creating or worsening a known risk of harm (state-created danger doctrine).

Defendant Du's actions reflect not mere negligence, but reckless disregard and cultural hostility, which proximately caused Plaintiffs' emotional, physical, and procedural injury

Plaintiffs demand compensatory and punitive damages, declaratory judgment against Defendant Du, and any other relief deemed just by this Court.

**Deprivation of Procedural Due Process and Promissory Misrepresentation by Precinct Commander Jane Doe #1**

(42 U.S.C. § 1983 – Fourteenth Amendment and State-Created Danger Doctrine)

Plaintiffs reallege and incorporate all preceding paragraphs as if fully set forth herein.

On the morning of October 28, 2023, a high-ranking NYPD officer — referred to herein as Precinct Commander Jane Doe #1 — visited Plaintiff at the hospital following the traumatic loss of her unborn child Rebecca.

This officer wore a white NYPD uniform, consistent with command-level personnel, and introduced herself as an official representative of the NYPD.

During this hospital visit, Jane Doe #1 made explicit verbal promises to Plaintiff that two formal police reports relating to the events of October 27 would be provided promptly.

Her statements, made under color of state authority and while Plaintiffs were in a condition of extreme physical and emotional distress, were reasonably relied upon.

However, no such reports were ever provided.

Despite Plaintiff's subsequent efforts to request or retrieve them through legal and administrative channels, the NYPD has continued to deny or obscure access to these documents.

Upon information and belief, Defendant Jane Doe #1 acted:

• with knowledge of the underlying police misconduct;

• in a deliberate attempt to delay, obstruct, or neutralize potential complaints or liability;

• and with disregard for the Plaintiff's due process rights, truth-seeking needs, and psychological condition as a grieving mother and recent detainee.

These actions violated the Fourteenth Amendment right to procedural due process, as well as New York State law governing access to public records and the obligation of public officers to act in good faith.

The failure to follow through on this critical promise, made during a moment of maximum vulnerability, caused Plaintiff profound emotional harm and denied her a fair opportunity to seek redress and legal remedy.

Plaintiffs demand judgment against Defendant Jane Doe #1, in her official and individual capacities, for compensatory damages, declaratory relief, and any further relief the Court deems appropriate.

**Failure to File Formal Complaint – Use of Unauthorized Personnel and Obstruction of Reporting Process**

On November 1, 2023, Plaintiff Su visited the 72nd Precinct of the NYPD to file a formal complaint regarding an assault that had occurred on October 29, 2023. However, instead of being processed by a police officer, the complaint was received by an administrative aide (PAA), identified only as "PAA Xian." The Plaintiff was issued an "Incident Information Slip," which notably lacked a full complaint number, shield number, and the signature of any sworn officer.

The assigned crime was listed as "Assault 3," a criminal offense under New York Penal Law. Despite the severity, no formal complaint report (UF-61) was issued, nor was the incident formally entered into the NYPD's complaint tracking system. This omission, deliberate or negligent, constitutes a deprivation of access to legal process and suggests institutional disregard or obstruction of the Plaintiff's attempt to report a violent crime.

Furthermore, Plaintiff's subsequent attempts to follow up with NYPD and retrieve a full copy of the incident report were unsuccessful. No record was produced, and no action was taken. This directly contributed to the prolonged denial of justice, emboldening the perpetrators while violating Plaintiff's right to equal protection and due process under the Fourteenth Amendment.

Faces —— November 1,2023 Incident at the 72nd Precinct

On November 1st, at approximately 2:00 PM, I went to the 72nd Precinct to request that a report be filed, due to an individual who had claimed to be from ACS the day before. The front desk was staffed by the same auxiliary officer (whom we refer to as Zhang Jinhui — we have a photo of him; he is of Asian descent and not tall). He said a report could not be filed. I asked whether I could file a complaint instead. He said yes and went to retrieve a complaint form.

At that moment, Officer "Ski" (phonetic) was at his workstation, and Zhang Jinhui approached him. Deputy Inspector Zeng Changwu also came out and joined their discussion. It appeared they collectively decided to ignore me. Following their conversation, Zhang Jinhui returned and then completely ignored me — refusing to give me the complaint form.

Shortly afterward, Officer #20090 returned from outside. I took note of her badge number. She noticed me as well and provocatively walked up, displaying her badge on her chest before entering the restricted work area.

Soon after, Officer #18688 came out, apparently about to respond to a call. I recognized him, looked at his badge, and he noticed that I was recording his badge number. He then set down his equipment bag, removed his body-worn camera, placed it on the desk, and gestured with his hand for me to leave the precinct with him.

I stepped back toward the upper left corner near the front desk and again asked the auxiliary officer for more complaint forms. Officer #20090 overheard this and aggressively emerged from behind the desk with a group of officers.

At that moment, Officer #18688 and another male officer with a buzz cut joined her. The three of them put me in a chokehold, grabbing my neck and forcibly lifting me off the ground — my feet left the floor. A group of officers then pushed me outside onto the sidewalk in front of the precinct.

**First Cause of Action**

(Excessive Force in Violation of the Fourth and Fourteenth Amendments – 42 U.S.C. § 1983)

Plaintiff realleges and incorporates by reference all preceding paragraphs.

Defendants, under color of state law, used excessive force when they placed Plaintiff in a chokehold, forcibly grabbed Plaintiff by the neck, and lifted Plaintiff off the ground, causing physical and emotional injury. This conduct was unreasonable, unnecessary, and violated Plaintiff's rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizures and excessive force.

**Second Cause of Action**

(Retaliation for Protected Activity – First Amendment – 42 U.S.C. § 1983)

Defendants retaliated against Plaintiff for exercising his First Amendment rights, including the right to file a complaint and to document officers' badge numbers. In direct response to Plaintiff's lawful attempt to obtain complaint forms and record public information, Defendants escalated force and assaulted him. This conduct was retaliatory and violated the First Amendment.

**Third Cause of Action**

(Denial of Access to Government Services – Fourteenth Amendment – Equal Protection and Due Process)

Plaintiff attempted to file a legitimate complaint at the police precinct. Defendants deliberately obstructed Plaintiff's access to complaint forms and internal reporting procedures, in violation of Plaintiff's right to petition the government and access public services equally under the law.

**Fourth Cause of Action**

(Failure to Intervene – 42 U.S.C. § 1983)

Several officers, including Deputy Inspector Zeng and Officer #20090, were present and had the opportunity to prevent or stop the use of excessive force but failed to do so. Their failure to intervene constituted a violation of Plaintiff's constitutional rights.

**Fifth Cause of Action**

(Assault and Battery – Under New York State Law)

Defendants' conduct — including placing Plaintiff in a chokehold, lifting him off the ground, and forcing him outside — constituted unlawful physical contact and threats of imminent harm, in violation of New York common law.



HUANG ZHENYING
(843) 301-4947
THE UPS STORE #3388
4142 OGLETOWN STANTON RD
NEWARK  DE 19713-4188

2 LBS         1 OF 1
SHP WT: 2 LBS
DWT: 14.12.4
DATE: 23 JUN 2025

SHIP CLERK OF COURT
TO:  225 CADMAN PLZ E

BROOKLYN  NY 11201-1832

NY 111 9-50

UPS NEXT DAY AIR SAVER  1P
TRACKING #: 1Z R61 R87 13 7440 9736

BILLING: P/P

REF #1: JB

HMORKRJPGNFM ISH 13.00C ZIP 450 22.5U 05/2025

To:

**Do not fold or be**

**THE UPS STORE**

**Photo Document Mailer**

From:

UPS



0  85227 01330  9



CLERK OF COURT
225 CADMAN PLZ E
BROOKLYN NY 11201

P:BOTBWN2MR  I.239

239-4594

1ZR61R8713744D 9736

**THE UPS STORE**
theupsstore.com

**UPS 330**

Made in Mexico



Made from 100% recycled paperboard.
Minimum 95% post-consumer content.

**Mailer Size:**
11 ½ x 14 ¼
**Mailer will hold:**
11 x 14 Photo Enlargements

# Photo Document Mailer

UPS
THE UPS STORE

Do not fold or be



From:

To:

RET ID: 11

BILLING: P/P

UPS NEXT DAY AIR SAVER 1P
TRACKING #: 1Z R61 R87 13 7440 9736

NY 111 9-50

BROOKLYN NY 11201-1832

TO: 225 CADMAN PLZ E
SHIP CLERK OF COURT

HUANG ZHENYING
(843) 301-4347
THE UPS STORE #3358
4142 OGLETOWN STANTON RD
NEWARK DE 19713-4189

DATE: 23 JUN 2025
2 LBS    1 OF 1