**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**



---

HUA SU; ZHENYING HUANG; A.S., a minor,
by Hua Su and Zhenying Huang as Next Friends;
ESTATE OF REBECCA SU, by Hua Su as Administrator; and
AD.S, a minor, by Hua Su and Zhenying Huang as Next Friends,

Plaintiffs,

— against —

CITY OF NEW YORK;
NYPD OFFICER HEBES AWAWDEH (Badge No. 135);
NYPD OFFICER GUOSHENG DU (Badge No. 14727);
NYPD OFFICER NADDER A. MUNASSAR (Badge No. 4980);
NYPD OFFICER KRIS LEE (Badge No. 31167);
NYPD OFFICER ZHOUBIN CHEN (Badge No. 3551);
NYPD OFFICER TRACEY R. METOO (Badge No. 20090);
NYPD OFFICER NICHOLAS A. ORTEGA (Badge No. 13565);
NYPD OFFICER NICHOLAS ROSADO (Badge No. 18688);
NYPD OFFICER TIMOTHY J. ANDERSON (Badge No. 14012);
NYPD OFFICER KRISTY M. RASHEVSKIY (Badge No. 24720) ;
NYPD OFFICER KEVIN A. WARD (Badge No. 4828);
NYPD SERGEANT RADOSLAW TUROWSKII ( Badge No. 3139);
NYPD SERGEANT STEPHEN ENNIS (Badge No. 1186);
NYPD LIEUTENANT   HERMAN LAI;
NYPD DEPUTY INSPECTOR KRYSTIN N. SUAREZ;
NYPD DEPUTY INSPECTOR TSANG MO. C;
NYPD IAB OFFICER LOUIS A. BREVETTI (Badge No.852);
NEW YORK CITY FIRE DEPARTMENT;
NYC CIVILIAN COMPLAINT REVIEW BOARD;

REC'D IN PRO SE OFFICE
JUN 9 '26 PM3:36

1

NYC ADMINISTRATION FOR CHILDREN'S SERVICES;
ACS WORKER CPS REYNOSO; NYU LANGONE HEALTH BROOKLYN;
JOHN AND JANE DOES 1–100,

Defendants.

---

Civil Action No. 25-CV-00477 (AMD)(PK)

## SECOND AMENDED COMPLAINT
### JURY TRIAL DEMANDED

## PRELIMINARY STATEMENT

This is a civil rights action brought pursuant to 42 U.S.C. § 1983, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York. Plaintiffs Hua Su, Zhenying Huang, A.S. (a minor), the Estate of Rebecca Su, and AD.S (a minor) seek redress for a sustained pattern of unconstitutional and tortious conduct spanning more than two years — from October 2022 through the present — by officers of the New York City Police Department ('NYPD'), the New York City Fire Department ('FDNY'), the NYC Civilian Complaint Review Board ('CCRB'), the NYC Administration for Children's Services ('ACS'), and NYU Langone Health Brooklyn.

For ten continuous months before October 28, 2023, Plaintiffs repeatedly sought police protection from escalating physical violence, chemical attacks, and explicit death threats at their residence at 612 57th Street, Brooklyn, New York. Officers of the 72nd Precinct responded to more than thirty 911 calls and, on each occasion, refused to generate required incident reports, characterized documented criminal assaults as landlord-tenant disputes, threatened to arrest the victims, and departed without enforcement action. 72nd Precinct personnel communicated to the perpetrators in advance that police would not respond to Plaintiffs' calls — converting the authority of law enforcement into a pre-emptive authorization of the ongoing criminal campaign against Plaintiffs'

2

family.

On the night of October 27–28, 2023, Ms. Huang — then twenty weeks pregnant — placed three 911 calls over more than two hours reporting an active violent assault and an explicit death threat against her unborn child, documented in CAD Event No. D23102722531. NYPD officers did not arrive until 00:50:34 — more than two hours after the first call at 22:28:56. Emergency medical personnel, who arrived at 00:27:50 and whose first inquiry was whether police had come, held at the scene awaiting a police response rather than immediately transporting a deteriorating pregnant assault victim. The ambulance did not depart until 01:28:43 — nearly three hours after the first 911 call. Rebecca Su — the unborn child who had been the subject of an explicit death threat — was pronounced dead at NYU Langone Health Brooklyn at approximately 3:00 a.m. on October 28, 2023, at twenty weeks of gestation.

What followed Rebecca Su's death was, if possible, worse. The officer who had threatened to arrest Ms. Huang if she called 911 was dispatched within minutes when the perpetrators called — and physically removed Mr. Su from his home, fracturing his fingers. Officers attempted to have Mr. Su involuntarily committed to a psychiatric facility without any medical assessment, ceasing only when they discovered he had recorded the entire episode. One of the perpetrators deliberately set a fire at the premises while three-year-old A.S. was inside. The same FDNY EMS crew that had responded the prior evening returned and falsely documented Mr. Su as intoxicated — without any test and without any clinical basis. Within hours of Rebecca Su's death, Ms. Huang was arrested on eleven criminal charges, including two B Felony counts, unanimously rejected by a Grand Jury. When Mr. Su went to the 72nd Precinct to file complaints, officers applied a chokehold, lifted him off the ground, and expelled him from the building onto the sidewalk.

Plaintiff A.S. was present throughout. She was the direct target of the first attack in December 2022. She was swung at with a skillet in February 2023. She waited in the street in the cold after midnight while her mother experienced contractions. She witnessed the handcuffing and arrest of her mother while her injured father lay on the floor. She was left alone, briefly, in a room with the people who had issued the death threat against her sibling. She was forced to withdraw from school and did not re-enroll for two years. She asks, still: 'Why did she kick us?'

The constitutional violations described herein were not aberrations. They reflect a municipal

3

custom of non-response toward a defined class of complainants, retaliation against those who seek accountability, and systematic destruction of evidence. Plaintiffs bring this action to vindicate their constitutional rights, to obtain redress for the death of Rebecca Su and the harms inflicted upon every member of the family, and to establish that no person — regardless of language, immigration status, or the willingness of perpetrators to intimidate police into complicity — may be denied the equal protection of the law.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because this action arises under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in Brooklyn, New York, within the Eastern District of New York.

4. Plaintiffs timely filed a Notice of Claim with the City of New York. The Notice of Claim was confirmed in writing on January 25, 2024. More than thirty (30) days have elapsed since service and the City has not adjusted or paid the claims. All conditions precedent to suit under N.Y. Gen. Mun. Law § 50-e have been satisfied.

## THE PARTIES

### I. Plaintiffs

5. Plaintiff Hua Su ('Mr. Su') is a resident of Brooklyn, New York. At all times relevant herein, Mr. Su resided with his family at 612 57th Street, Brooklyn, New York 11220 ('the Premises'), officially registered as a three-family residence. Mr. Su is the husband of Plaintiff Huang, the

4

father of Plaintiff A.S. and the late Rebecca Su, and the father of Plaintiff AD.S.

6.    Plaintiff Zhenying Huang ('Ms. Huang') is the wife of Mr. Su and co-resident at the Premises. On October 27, 2023, Ms. Huang was twenty (20) weeks of gestation, pregnant with Rebecca Su. She brings claims in her individual capacity and as next friend of A.S. and AD.S.

7.    Plaintiff A.S. is the minor daughter of Mr. Su and Ms. Huang, born in January 2020. She was two to three years old during the events described herein. A.S. was present for every significant event in this Complaint: she was the direct target of the initial December 21, 2022 attack; she was swung at with a skillet on February 11, 2023; she was held by her mother during the October 27, 2023 assault and present when Qin Lin stated the goal was for her unborn sibling to die; she waited in the street in the cold after midnight while her mother experienced contractions; she was left alone in the Premises with the perpetrators while officers removed Mr. Su to the street; and she witnessed her mother's arrest and handcuffing on the evening of October 28, 2023, running from the bedroom to throw herself onto her injured father and asking: 'Why are they taking Mommy away? Why aren't they arresting the bad people?' As a direct and proximate result of Defendants' conduct, A.S. was forced to withdraw from school in 2023 and did not re-enroll until September 2025. A.S. brings claims by and through Mr. Su and Ms. Huang as Next Friends.

8.    Plaintiff the Estate of Rebecca Su brings this action through Hua Su as Administrator. Rebecca Su was an unborn female child at twenty (20) weeks of gestation on October 27–28, 2023, the daughter of Mr. Su and Ms. Huang. Rebecca Su died at NYU Langone Health Brooklyn at approximately 3:00 a.m. on October 28, 2023, following Defendants' deliberate failure to respond to three 911 calls reporting an active violent assault and an explicit death threat against her. The Estate brings survival claims under N.Y. EPTL § 11-3.2, wrongful death claims under N.Y. EPTL § 5-4.1, and constitutional claims under 42 U.S.C. § 1983 on a state-created danger theory. See DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189 (1989); Matican v. City of New York, 524 F.3d 151 (2d Cir. 2008).

9.    Plaintiff AD.S is a minor child of Mr. Su and Ms. Huang, born after Rebecca Su's death and named in part to honor Rebecca Su's memory. AD.S brings claims by and through Mr. Su and Ms. Huang as Next Friends. But for the events described in this Complaint — the death of a sibling, the false arrest of a parent, the destruction of the family's housing stability, displacement across

six states, deprivation of a settled home and educational environment — AD.S would have been born into an entirely different life. The harms described herein are AD.S's inheritance.

## II. Municipal Defendant

10. Defendant City of New York ('City') is a municipal corporation organized under the laws of the State of New York and the employer of all NYPD officers, FDNY personnel, ACS employees, and CCRB staff named herein. The City is responsible for the policies, customs, practices, training, supervision, and discipline of its employees and agencies. The City is sued pursuant to 42 U.S.C. § 1983 under Monell v. Department of Social Services, 436 U.S. 658 (1978).

## III. NYPD Officer Defendants

11. Defendant Officer Hebes Awawdeh (Badge No. 135) was at all relevant times a police officer at the 72nd Precinct. On December 21, 2022, he took no enforcement action, terminated the telephone interpreter service, directed the incident report to the attacker rather than the victims, and was named officer of the month. On February 18, 2023, when all three Plaintiffs sought the December 21 report at the precinct, he observed them, ignored them, and departed without correcting the incomplete record he had created.

12. Defendant Officer Guosheng Du (Badge No. 14727) was at all relevant times a police officer at the 72nd Precinct serving as Chinese-language liaison. He reviewed body-worn camera footage confirming the December 21, 2022 assault; discouraged Plaintiffs from legal redress; suggested a fraudulent claim; offered to serve as police contact for the assailants' landlord; told Ms. Huang on October 24, 2023, 'You still haven't moved out?'; and on November 3, 2023, directed Mr. Su to abandon his lawsuits and leave the country.

13. Defendant Officer Nadder A. Munassar (Badge No. 4980) was at all relevant times a police officer at the 72nd Precinct. He responded to 612 57th Street on August 24, October 16, October 27–28, and October 28, 2023. On each occasion he refused to report, characterized assaults as landlord matters, threatened victims, and protected perpetrators. On October 27–28, 2023, he arrived at 00:50:34 — over two hours after the first 911 call — and threatened Ms. Huang with

6

arrest for calling 911. On October 28, 2023, within twenty (20) minutes of being named in an IAB complaint, he physically removed Mr. Su from his home, fracturing his fingers, and participated in an attempted involuntary psychiatric transport.

14.    Defendant Officer Kris Lee (Badge No. 31167) was at all relevant times a police officer at the 72nd Precinct. On October 27–28, 2023, he physically intervened to prevent Officer Chen from providing Plaintiffs with information needed for an Order of Protection for Rebecca Su. He laughed upon learning of Rebecca Su's death, as observed by Ms. Huang and reported to Commanding Officer Suarez.

15.    Defendant Officer Zhoubin Chen (Badge No. 3551) was at all relevant times a police officer at the 72nd Precinct. On October 27–28, 2023, he confirmed familiarity with Plaintiffs' call history, characterized assaults as a domestic dispute, refused any incident report, and complied with Officer Lee's physical intervention to withhold information. On October 28, 2023, he participated in the attempted involuntary psychiatric transport and was present when Plaintiffs' recording was discovered. He was designated as sole translator during Commanding Officer Suarez's investigation of his own conduct.

16.    Defendant Officer Tracey R. Metoo (Badge No. 20090) was at all relevant times a police officer at the 72nd Precinct. On October 28, 2023 afternoon, she failed to address Ms. Huang's visible injuries and engaged privately with the perpetrator. Within one hour of her departure, another attack occurred. She participated in the mass response to Minai Lian's 911 call and in Ms. Huang's false arrest. On November 1, 2023, she participated in the physical assault on Mr. Su at the 72nd Precinct.

17.    Defendant Officer Nicholas A. Ortega (Badge No. 13565) was at all relevant times a police officer at the 72nd Precinct. On October 28, 2023, he arrested Ms. Huang on eleven charges unanimously rejected by a Grand Jury; failed to administer Miranda warnings; and authorized a search of Ms. Huang's person by two male officers despite the presence of female officers.

18.    Defendant Officer Nicholas Rosado (Badge No. 18688) was at all relevant times a police officer at the 72nd Precinct. On October 28–29, 2023, he stated upon arriving: 'I will not change my colleague's report' — before examining anything. On November 1, 2023, he deliberately removed his body-worn camera before participating in the physical assault on Mr. Su at the 72nd

Precinct.

19.   Defendant Officer Timothy J. Anderson (Badge No. 14012) was at all relevant times a police officer at the 72nd Precinct. On October 28, 2023, he participated in Ms. Huang's arrest, searched her person despite the presence of female officers, and prepared an intake document reflecting a felony charge while folding the document to conceal this classification from Ms. Huang.

20.   Defendant Officer KRISTY M. RASHEVSKIY (Badge No. 24720)was at all relevant times a police officer at the 72nd Precinct. On October 29, 2023, she transported Ms. Huang to the Manhattan Detention Complex without informing her of the destination, cut off Ms. Huang's hospital wristband prior to departure, and initially processed Ms. Huang without disclosing her post-fetal-death medical condition to intake staff.

21.   Defendant Officer KEVIN A. WARD (Badge No. 4828) was at all relevant times a police officer at the 72nd Precinct. He was present during Ms. Huang's arrest on October 28, 2023, and visibly reacted with surprise at the decision to arrest her.

22.   Defendant Sergeant Radoslaw Turowskii (Badge No. 3139) was at all relevant times a sergeant at the 72nd Precinct. On December 21, 2022, he released the attacker without arrest and took no statement from victims. On October 29, 2023, he falsely told Mr. Su that Ms. Huang remained at the 72nd Precinct when she had already been transferred to the Manhattan Detention Complex. On November 1, 2023, he authorized through inaction the denial of complaint forms to Mr. Su.

23.   Defendant Sergeant Stephen Ennis (Badge No. 1186) was at all relevant times a sergeant at the 72nd Precinct. On October 28, 2023, he disconnected Mr. Su's emergency medical call, directed Mr. Su to stand despite his injuries, and after all other officers had departed, returned alone to the Premises, kicked Mr. Su while he was on the floor injured, and dragged him across the floor. Sergeant Ennis does not appear in the body-worn camera footage produced by Defendants despite his documented presence at the scene.

24.   Defendant Lieutenant Herman Lai was at all relevant times a lieutenant at the 72nd Precinct. On October 28, 2023, he was present at 612 57th Street and personally signed the authorization for Ms. Huang's arrest on eleven charges subsequently rejected in their entirety by a Grand Jury.

8

25. Defendant Commanding Officer Krystin N. Suarez was at all relevant times the Commanding Officer of the 72nd Precinct. She personally conducted the October 28, 2023 IAB investigation using a named complaint subject as sole translator; declined to act when Officer Lee laughed at Rebecca Su's death; promised incident reports that were never produced; and in June 2024 personally directed the refusal of Plaintiffs' theft complaint despite video evidence. Following the events described herein, Commanding Officer Suarez was reassigned from the 72nd Precinct to Deputy Inspector at Patrol Borough Staten Island.

26. Defendant Deputy Inspector Tsang Mo. C was at all relevant times a Deputy Inspector at the 72nd Precinct. On November 1, 2023, he authorized through direct communication with the front desk the denial of complaint forms to Mr. Su, facilitating the subsequent physical assault on Mr. Su.

27. Defendant IAB Officer Louis A. Brevetti (Badge No.852) was at all relevant times an IAB dispatcher. On October 28, 2023, at approximately 5:40 a.m., he received Mr. Su's IAB complaint, promised a formal response within fourteen (14) days, and failed to ensure any investigation was conducted or any response was provided.

## IV. New York City Fire Department

28. Defendant New York City Fire Department ('FDNY') is an agency of the City responsible for emergency response, fire suppression, and emergency medical services ('EMS'). FDNY is named as a defendant for three distinct failures:

(a) On October 27–28, 2023, FDNY EMS personnel arrived at 612 57th Street at 00:27:50 in response to Ms. Huang's third 911 call at 23:54:42, as documented in CAD Event No. D23102722531. Their first inquiry was: 'Have the police come?' Rather than immediately transporting Ms. Huang — a pregnant assault victim experiencing contractions — EMS held at the scene awaiting police. The ambulance did not depart until 01:28:43. Ms. Huang should have been transported immediately upon EMS arrival. This delay contributed to Rebecca Su's death.

(b) On October 28, 2023, the same FDNY EMS crew and vehicle returned to 612

57th Street in connection with Mr. Su's injuries. EMS personnel did not provide Mr. Su with a stretcher, requiring him to descend from the second floor and walk to the ambulance despite his injuries. Once inside, EMS personnel falsely documented Mr. Su's condition as indicating alcohol intoxication. No intoxication test was administered. No clinical basis for this notation existed. This false medical record — prepared by the same crew present when Rebecca Su died — constitutes fabrication to discredit Mr. Su's account of the October 27–28 events.

(c)    Following Mr. Su's 911 call reporting the deliberate arson on October 28, 2023, FDNY firefighters responded and extinguished the fire. FDNY generated no arson referral and made no documentation of the fire's deliberate origin as reported by Mr. Su, despite mandatory reporting obligations applicable to intentionally set fires.

## V. Civilian Complaint Review Board

29.    Defendant NYC Civilian Complaint Review Board ('CCRB') is an independent City agency. In CCRB Case No. 202310757, the CCRB: (a) issued a finding of 'no arrest made or summons issued' on October 28, 2023, directly contradicted by Kings County Criminal Court Case No. CR-039674-23KN, by the CCRB's own documentation of body-worn camera evidence collected from seven officers, and by CAD Event No. D23102722531; (b) treated attorney Emily Popish as Plaintiffs' authorized representative after receiving Plaintiffs' written revocation; (c) fabricated a reference to a complaint regarding Sergeant Jack Liu — an officer Plaintiffs never named — and issued a finding of full compliance; and (d) imposed only Formalized Training — the minimum sanction — in response to misconduct resulting in the death of an unborn child.

## VI. Administration for Children's Services

30.    Defendant NYC Administration for Children's Services ('ACS') is a City agency. Defendant CPS Reynoso was at all relevant times an ACS caseworker. On October 30–31, 2023, CPS Reynoso contacted Plaintiffs under the pretext of providing shelter assistance; obtained Plaintiffs' hotel address; discouraged Plaintiffs from filing formal complaints at NYPD headquarters; appeared with documents purporting to establish that Plaintiffs were barred from their residence;

10

attempted to physically approach A.S. without parental consent; and subsequently initiated a child abuse investigation that was not substantiated. The entirety of Reynoso's October 31, 2023 visit was recorded by Plaintiffs and is preserved in its original form.

## VII. NYU Langone Health Brooklyn

31.    Defendant NYU Langone Health Brooklyn received Ms. Huang on October 28, 2023. Plaintiffs allege NYU Langone: (a) recorded Ms. Huang's gestational age as 19 weeks and 5 days (19+5) when her actual term was twenty (20) completed weeks, placing Rebecca Su's death below the mandatory reporting threshold under N.Y. Public Health Law § 4160; (b) failed to provide a Fetal Death Certificate, cause-of-death determination, or pathology report; (c) sought to dispose of Rebecca Su's remains without informing Plaintiffs of their rights, ceasing only upon Plaintiffs' invocation of this proceeding; and (d) produced records reflecting a Troponin blood draw at 2:00 a.m. — thirteen (13) minutes before the EMS Sprint Report records Ms. Huang's arrival — indicating alteration of either hospital or EMS records.

## VIII. John and Jane Does 1–100

32.    Defendants John and Jane Does 1–100 are NYPD officers, FDNY personnel, ACS employees, CCRB staff, and other City employees whose identities are not yet fully known to Plaintiffs but who participated in the events described herein. Plaintiffs will seek to identify and amend to name these defendants upon completion of discovery.

## **PRIOR PROCEEDINGS**

33.    On January 28, 2025, Plaintiffs filed the original Complaint in this action (Dkt. No. 1), pro se.

34.    On May 11, 2026, Defendant City of New York filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 39) and a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 38). This Second Amended Complaint is filed in response to, and in opposition to,

both motions.

35.   This Second Amended Complaint supersedes the original Complaint in its entirety. The factual allegations herein are supported by:

(a)   CAD Event No. D23102722531 — NYPD Computer Aided Dispatch record for 612 57th Street on October 27–28, 2023, documenting three 911 calls at 22:28:56, approximately 23:00, and 23:54:42, EMT arrival at 00:27:50, and officer arrival at 00:50:34;

(b)   NYPD Sprint Report D23102807381 — October 27–28, 2023 incident. Plaintiffs accept the timestamps as accurate; Plaintiffs reserve the right to contest certain narrative characterizations therein;

(c)   NYPD Sprint Report D23102818691 (redacted) — October 28, 2023 incident. Plaintiffs accept timestamps as accurate and reserve the right to contest certain characterizations;

(d)   NYPD Sprint Report D23102814804 — October 28, 2023 afternoon incident. Timestamps accepted as accurate: first 911 at 15:56:24; dispatch generated 16:09:33; first dispatch 16:24:59; logged arrival 16:42:08; second 911 at 16:46:04; second logged arrival 16:46:10; third inquiry 16:55:22; actual appearance upstairs 17:16:10; departure 17:29:50;

(e)   NYPD body-worn camera footage from October 28, 2023, produced through attorney Popish on or about January 4, 2024 — which Plaintiffs allege has been edited to remove Sergeant Ennis and one wave of FDNY EMS responders;

(f)   Medical records from NYU Langone Health Brooklyn and Maimonides Health;

(g)   Kings County Criminal Court records in Case No. CR-039674-23KN, sealed under N.Y. CPL § 160.50 upon the Grand Jury's return of No True Bills on all eleven counts on December 22, 2023;

(h)   CCRB Case No. 202310757; and

(i)   Plaintiffs' contemporaneous recordings — including the October 28, 2023 morning confrontation capturing four NYPD officers, two FDNY EMS personnel, and the

12

ambulance summoned for the attempted involuntary psychiatric transport of Mr. Su —
preserved in their original, unedited form.

36. Defendant City's motion characterizes the original Complaint as 'confusing and disorganized.' Plaintiffs respectfully submit that this characterization reflects strategic interest rather than genuine pleading deficiency. A complaint of 100 to 120 pages is not inherently deficient under Rule 8(a) when the underlying events are as numerous, specific, and interrelated as those alleged here. See Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004).

## OVERVIEW

For approximately ten months before Rebecca Su's death on October 28, 2023, Plaintiffs repeatedly sought assistance from law enforcement regarding escalating threats, physical assaults, and safety concerns at 612 57th Street, Brooklyn, New York. The incidents described below did not occur in isolation. They occurred against the backdrop of a coordinated campaign — by private individuals, accommodated and ultimately aided by public officials — to drive Plaintiffs from their home through violence, fear, and official indifference. Rebecca Su's death is not the incidental conclusion of this narrative. It is the destination toward which the entire sequence of official conduct was pointed.

The factual narrative is organized as follows:

**Section A:** Core Event 1 (December 21, 2022) — initial violent attack and established pattern of police non-response;

**Section B:** Escalating Pattern (January – August 23, 2023) — recurring assaults and Officer Du's conduct;

**Section C:** Core Event 2 (August 24 – October 28, 2023, 19:00) — final escalation before Rebecca Su's death, including the October 23 pre-authorization admission;

**Section D:** October 27–28, 2023 — three 911 calls, the death threat against Rebecca Su, the two-hour non-response documented in CAD Event No. D23102722531 and Sprint

13

Report D23102807381, and Rebecca Su's death;

**Section E:** October 28, 2023 Morning — retaliatory seizure, attempted psychiatric transport abandoned upon discovery of Plaintiffs' recording, false intoxication record, arson, and Commanding Officer Suarez's investigation;

**Section F:** October 28, 2023 Afternoon and Evening — pesticide attack, false arrest documented in Sprint Report D23102814804, and unlawful detention;

**Section G:** Post-Arrest Events (October 28 – November 2, 2023);

**Section H:** Evidence Destruction and Record Falsification; and

**Section I:** Municipal Customs, Practices, and Deliberate Indifference — Monell claims against the City.

# FACTUAL ALLEGATIONS

**Background: The Premises and the Pattern**

37.    At all times relevant herein, Plaintiffs resided at 612 57th Street, Brooklyn, New York 11220 ('the Premises'), officially registered as a three-family residence. Plaintiffs occupied the second floor pursuant to a lease with Qin Lin, who represented himself as the property owner. Plaintiffs were independent residential tenants — not roommates — entitled to all protections afforded to tenants under New York law.

38.    Also residing at the Premises were: (a) the Lian family — Minai Lian, her mother and her father Caidong Lian; and (b) a first-floor female tenant ('First-Floor Tenant') who acted as an agent for the landlord. Qin Lin and the Lian family are related. The First-Floor Tenant and the Lian family are also related.

39.    Within ten (10) hours of Plaintiffs' move-in on October 2, 2022, the First-Floor Tenant stated: 'People with children belong in the basement,' and demanded Plaintiffs vacate. This was the first in a continuous series of harassment, physical assaults, and threats orchestrated by the Lian family in coordination with Qin Lin, with the objective of unlawfully evicting Plaintiffs from their home.

40.   From October 2022 through October 2023, Plaintiffs placed more than thirty (30) calls to 911 reporting ongoing harassment, physical assaults, chemical hazards, and death threats by the Lian family. The 72nd Precinct systematically refused to investigate, characterized documented physical assaults as domestic disputes or landlord-tenant matters, failed to generate required Complaint Reports (UF-61), and in multiple instances actively threatened and discouraged Plaintiffs from seeking police protection.

## A.  Core Event 1: December 21, 2022

### i. The 7:00 p.m. Attack

41.   On December 21, 2022, at approximately 7:00 p.m., all three Plaintiffs were present on the second floor of the Premises. A.S. was then two (2) years old. Minai Lian's mother approached A.S. at the doorway of Plaintiffs' room and directed verbal abuse at the child: 'What are you smiling at? Get out.' Minai Lian's mother then moved toward A.S. and attempted to strike her. Ms. Huang immediately interposed her body to shield A.S. While bracing against the dining table to prevent hot soup from overturning onto A.S., Ms. Huang sustained a lumbar strain. Minai Lian's mother struck and kicked Ms. Huang's leg. Mr. Su directly witnessed the entire sequence.

42.   Ms. Huang called 911. Officers responded, including Officer Hebes Awawdeh (Badge No. 135). A Fujianese-speaking male interpreter participated by telephone. The interpreter asked Minai Lian's mother: 'Why did you kick the person?' Minai Lian's mother acknowledged the attack, stating the child was noisy. Upon being informed she could be arrested and face court, she stated: 'I don't want to go to court.' All three Plaintiffs witnessed this.

43.   Minai Lian returned. Officer Awawdeh and Minai Lian interacted with evident familiarity. Officer Awawdeh interrupted his colleague's taking of Minai Lian's mother 's statement, directed Plaintiffs to their room, terminated the telephone interpreter service, and after reviewing Minai Lian's mother 's identification, became noticeably more favorable toward the Lian family. No arrest was made. No summons issued. No UF-61 generated. No report number provided.

44.   After confirming officers had departed, Minai Lian directed Caidong Lian to close the second-floor door and launched a sustained campaign of threats, door-pounding, and harassment

15

lasting approximately three and one-half (3.5) hours, stating: 'You dared to call the police? Call the police and you won't be able to stay here.' A.S., then two years old, trembled in Ms. Huang's arms and asked: 'Mommy, why did she kick someone?' — a question she would repeat on many occasions thereafter.

### ii. Second 911 Call — Sergeant Turowskii

45.    At approximately 11:00 p.m., Ms. Huang placed a second 911 call. All three Plaintiffs were present. Officer Awawdeh returned, and Sergeant Radoslaw Turowskii (Badge No. 3139) responded.

46.    Officer Awawdeh and Sergeant Turowskii spoke to Minai Lian's mother in a consoling manner and directed her to her room. Sergeant Turowskii released Minai Lian's mother without arrest, took no statement from any Plaintiff, and generated no incident report. Officer Awawdeh was named the 72nd Precinct's officer of the month for the relevant period.

47.    While Ms. Huang was transported to hospital by ambulance for her lumbar injury, Officer Awawdeh asked her again whether she wanted Minai Lian's mother taken away. When Minai Lian asked Officer Awawdeh to whom the report would be sent, Awawdeh stated it would be sent to her — the attacker's daughter — not to Plaintiffs, the victims. Plaintiffs later received only an Incident Information Slip. No full UF-61 was ever provided. Plaintiffs' FOIL request for December 21 records was unsuccessful; related communications were subsequently recalled or disappeared.

### B.  Escalating Pattern: January 2023 — August 23, 2023

### i.  February 18, 2023: All Three Plaintiffs at the 72nd Precinct

48.    On February 18, 2023, all three Plaintiffs went to the 72nd Precinct with a paid medical bill from Ms. Huang's December 21, 2022 hospital visit, seeking the Complaint Report from the December 21 assault. A.S. was present throughout.

49.    Front desk officer Abdul Tamoor prepared an Incident Information Slip that omitted: the

7:00 p.m. attack on A.S.; Minai Lian's mother 's acknowledgment through the interpreter; Ms. Huang's lumbar injury and ambulance transport; and the 3.5-hour campaign of threats. The slip mischaracterized the incident as 'harassment.' All three Plaintiffs challenged these omissions for approximately thirty (30) minutes.

50. Officer Awawdeh appeared in the precinct corridor during this time. All three Plaintiffs observed him. He ignored them completely, entered a break room, later emerged, spoke quietly with Officer Tamoor, and departed — despite having the ability to correct the record.

51. Officer Tamoor summoned Officer Guosheng Du (Badge No. 14727). Officer Du reviewed the December 21, 2022 body-worn camera footage while all three Plaintiffs waited. Upon emerging, he directed all three Plaintiffs away from the front desk toward a wall area Plaintiffs observed to be outside security camera coverage. A.S. was present.

52. Officer Du then made the following statements, as directly heard by Mr. Su and Ms. Huang:

    **(a)**  He had reviewed the footage and understood what occurred;

    **(b)**  To obtain a Complaint Report, Plaintiffs would need to pay $20.00 at NYPD headquarters;

    **(c)**  Plaintiffs should sue the landlord directly;

    **(d)**  Plaintiffs could tear up A.S.'s drawings, falsely report them as worth thousands of dollars, and use that as a basis for a police report — a suggestion all three Plaintiffs immediately and explicitly rejected as dishonest and unlawful;

    **(e)**  If future incidents occurred, Plaintiffs could contact him directly; and

    **(f)**  Plaintiffs' landlord could also contact him directly.

53. Ms. Huang presented Officer Du with the paid medical bills. Officer Du's offer in ¶52(f) — that Plaintiffs' landlord could contact him directly — was made with knowledge that Qin Lin coordinated the harassment campaign against Plaintiffs, and served to connect the perpetrators' principal to a police liaison rather than protect the victims. Plaintiffs relied on Officer Du's representations in ¶52(e) and (f) and did not immediately escalate to other authorities.

17

**ii. February 11, 2023: Skillet Attack on A.S.**

54.   On February 11, 2023, at approximately 12:30 p.m., Mr. Su and A.S. were present on the second floor. Ms. Huang was absent — attending a physical therapy appointment in Flushing, Queens, for the lumbar injury sustained on December 21, 2022. Mr. Su was feeding A.S., then approximately two (2) years old, at the dining table.

55.   Qin Lin entered without invitation and stated: 'Your child is too noisy. You must move out immediately.' Immediately thereafter, Minai Lian entered the dining area, seized a T-fal skillet loaded with food from Plaintiffs' dining table, and hurled it directly at A.S. A metal skillet loaded with food, directed at a two-year-old child, constitutes a dangerous instrument under N.Y. Penal Law § 10.00(13). Mr. Su immediately interposed his body between the skillet and A.S., absorbing the impact. This constituted assault with a dangerous instrument upon both A.S. and Mr. Su, directly witnessed by both.

56.   Minai Lian dropped the skillet, stamped on it, then seized Plaintiffs' rice cooker and threw it to the ground. Caidong Lian entered and began removing evidence. Mr. Su reached for his phone to call 911. Qin Lin physically seized Mr. Su's arm and grabbed the phone, stating: 'Don't call the police. Calling the police won't do you any good.' A.S. witnessed this.

57.   Mr. Su recovered his phone but did not call 911. Given Qin Lin's explicit statement that calling the police would do no good, and given the officers' consistent prior refusal to take any enforcement action at 612 57th Street, Mr. Su had reasonable grounds to believe that a 911 call would be futile. The following morning, February 12, 2023, all three Plaintiffs went to the 72nd Precinct to report the attack. A front desk officer refused to accept any report, citing absence of original identification documents. No Complaint Report was generated.

**iii. Approximately February 2023: Officer Tan**

58.   In approximately February 2023, all three Plaintiffs called 911 following another attack by Minai Lian. Officers Harvey Tan (Badge No. 25453) and Ifeanyichukwu J. Emeh (Badge No. 31307) responded. Minai Lian falsely told officers Plaintiffs were roommates. When Officer Tan attempted to move a chair as part of enforcement, Minai Lian physically pushed him and seized

the chair. She stated directly: 'I am specifically going to cause problems for them. I will continue to cause problems for them. I am going to file a complaint against you.' Officers Tan and Emeh departed without any enforcement action despite Minai Lian's physical resistance and explicit announcement of continued intent to attack Plaintiffs.

### iv. June 1, 2023: Unlawful Entry

59.    On June 1, 2023, at approximately 18:47, Qin Lin and his wife unlawfully entered the Premises and attempted to evict all three Plaintiffs. Plaintiffs called 911. Responding officers told Qin Lin: 'You are not the property owner. You cannot attack or harass people. If you continue, I will arrest you.' Officers directed Plaintiffs to their room and departed without further action.

### v. September 2023: Chemical Attack During Pregnancy

60.    In September 2023, Ms. Huang was approximately three to four months pregnant with Rebecca Su. While all three Plaintiffs were absent, the Lian family sprayed large quantities of pesticide throughout the second-floor common areas. A written note was posted on the stove only after the spraying was complete. All three Plaintiffs were forced to evacuate and remain outside upon return.

### C.  Core Event 2: August 24, 2023 — October 28, 2023, 19:00

### i. August 24, 2023: Grocery Attack — Munassar's First Refusal

61.    On August 24, 2023, at approximately 13:50, all three Plaintiffs returned to the Premises to find a wire-frame bed obstructing access to their bedroom. Minai Lian knocked Plaintiffs' groceries to the floor and verbally abused all three Plaintiffs, telling her mother: 'You have time. Sit at the door every day and curse them. What can they do to you?' Plaintiffs called 911. Officer Nadder A. Munassar (Badge No. 4980) responded at a significantly delayed time, stated the matter was not police business, and departed without action. This was Officer Munassar's first of four responses to 612 57th Street, each following the same pattern.

**ii. October 16, 2023: Slippery Foam Hazard**

62.   On October 16, 2023, at approximately 17:00, Ms. Huang — then approximately four months pregnant with Rebecca Su — returned to the Premises with A.S. after school pickup. Mr. Su was present. A.S. slipped and fell immediately upon entering the second floor. Ms. Huang discovered white foam spread from the entrance to their room door. She cleaned it three times without fully removing it. At approximately 17:05, she told Minai Lian's mother this was unlawful; Minai Lian's mother responded with verbal abuse and retreated only when Ms. Huang produced her phone to record. At approximately 19:00, Minai Lian returned and immediately cleaned the remaining substance.

63.   Mr. Su called 911. Officer Munassar did not arrive until approximately 11:00 p.m. He questioned Minai Lian, who feigned ignorance, then turned to leave without action. When Mr. Su followed and explained the incident, Officer Munassar stated the matter was for the landlord. The First-Floor Tenant then falsely reported that Mr. Su had harassed her. Officer Munassar returned and threatened to arrest Mr. Su before departing.

**iii. October 16–23, 2023: Continuing Threats**

64.   Between October 16 and October 23, 2023, all three Plaintiffs called 911 multiple times regarding continuing threats by the Lian family. Responses were delayed, inadequate, or entirely absent.

**iv. October 23, 2023: The Pre-Authorization Admission**

65.   On October 23, 2023, another violent incident occurred. All three Plaintiffs called 911. No officers responded. Qin Lin arrived and stated to all three Plaintiffs: 'The police will not come — I know this. We have been to the precinct. They told us they won't deal with this.' Caidong Lian confirmed: 'The police won't come — the police won't manage this matter, understood?' These statements — documented in Plaintiffs' contemporaneous recordings — establish that 72nd Precinct personnel had communicated in advance to the perpetrators that officers would not

respond to Plaintiffs' calls, constituting a pre-emptive authorization of the ongoing criminal conduct against Plaintiffs.

### v. October 24, 2023: Officer Du's Final Contact

66.   On October 24, 2023, following a prenatal appointment, Ms. Huang went to the 72nd Precinct and located Officer Du. His first words upon seeing her: 'You still haven't moved out?' When Ms. Huang described the October 16 and October 23 incidents, Officer Du stated: 'You should just move out. Otherwise, keep calling 911.' He declined to investigate.

## D.  October 27–28, 2023: Three 911 Calls and the Death of Rebecca Su

### i.  The Attack

67.   On October 27, 2023, at 22:28:56, as documented in CAD Event No. D23102722531 and NYPD Sprint Report D23102807381, Ms. Huang placed the first of three 911 calls from 612 57th Street. She informed the dispatcher that she was pregnant, a young child was present, the family was under active violent attack, and an explicit death threat had been made against her unborn child. This call lasted approximately fourteen (14) minutes.

68.   During the attack, Caidong Lian struck Mr. Su with a chair, causing injury to his right posterior leg. Ms. Huang moved to intervene and was pushed against a wall by Minai Lian. All three Lian family members cornered Ms. Huang — who was holding A.S. — against a wall. Minai Lian used an object to strike Ms. Huang in the face. Qin Lin then stated: 'The goal is for your unborn child to die.' Minai Lian's mother immediately placed her hand over Qin Lin's mouth. Upon hearing police sirens, Ms. Huang took A.S. and fled to the street, as directly witnessed by Mr. Su.

### ii.  Three 911 Calls — Documented Timeline

69.   The following sequence is documented in CAD Event No. D23102722531 and NYPD Sprint

Report D23102807381. Plaintiffs accept the timestamps as accurate:

**22:28:56**   Ms. Huang places the first 911 call from 612 57th Street. She reports: active violent assault; pregnant victim; young child present; explicit death threat against the unborn child. Call duration approximately fourteen (14) minutes.

**~23:00**   Ms. Huang places the second 911 call from the street, reporting the assault continues inside the Premises. Mr. Su and A.S. are with her.

**23:54:42**   Ms. Huang places the third 911 call requesting EMS. She has begun experiencing irregular abdominal contractions. Mr. Su and A.S. are present.

**00:27:50**   FDNY EMS personnel arrive. First inquiry: 'Have the police come?' No police have arrived. EMS also call police directly. Police do not respond.

**00:50:34**   Officers Munassar (Badge No. 4980), Lee (Badge No. 31167), and Chen (Badge No. 3551) arrive — not at the Premises, but at the street location where Plaintiffs are sheltering. More than two (2) hours have elapsed since the first 911 call.

**01:28:43**   Ambulance departs for NYU Langone Health Brooklyn. Ms. Huang has been experiencing contractions for over ninety (90) minutes.

70.   The two-hour-and-twenty-three-minute gap between Ms. Huang's first 911 call at 22:28:56 and the officers' arrival at 00:50:34 — during which a pregnant woman in contractions waited in the street with a three-year-old child while her attacker remained inside — is documented in official dispatch records and is not disputed.

### iii. Officer Conduct Upon Arrival

71.   Officers Munassar, Lee, and Chen arrived visibly irritated. When Plaintiffs requested they accompany them to 612 57th Street to document the assault scene, Officer Munassar refused, stated Plaintiffs should contact their landlord, and turned toward his patrol vehicle. Mr. Su, carrying A.S., pursued him.

72.   Officer Chen acknowledged he had reviewed Plaintiffs' call history before arriving. Despite

22

awareness of the ten-month documented pattern, he characterized the assaults as a domestic dispute and refused any incident report. When Mr. Su explained a report was needed to support an Order of Protection to protect Rebecca Su, Officer Chen agreed to retrieve Minai Lian's mother's identifying information from the December 21, 2022 records.

73. At the moment Officer Chen reached for his pad, Officer Kris Lee physically interposed himself, placed his hand in front of Officer Chen, and directed him not to provide any information to Plaintiffs. Officer Chen complied. The information needed for an Order of Protection to protect Rebecca Su was withheld.

74. Officers Munassar, Lee, and Chen then entered the Premises with Plaintiffs. Inside, in Plaintiffs' presence, Officer Munassar made assurances to the Lian family and then stated directly to Mr. Su: 'If you call the police again, I will have you arrested.' This threat was made to a man whose pregnant wife had been violently attacked and whose unborn child had been the subject of an explicit death threat communicated to three 911 dispatchers.

75. At 01:28:43, after observing Ms. Huang's deteriorating condition, the attending EMT stated: 'You must go to the hospital. The police will not give you a report — but I will.' Ms. Huang was transported by ambulance to NYU Langone Health Brooklyn. A.S. remained with Mr. Su.


### iv. The Death of Rebecca Su

76. At approximately 3:00 a.m. on October 28, 2023, physicians at NYU Langone Health Brooklyn informed Ms. Huang that the fetal heartbeat had ceased. Rebecca Su was pronounced deceased. Ms. Huang refused to accept the diagnosis and requested additional tests; the result was confirmed. Rebecca Su died on October 28, 2023. She was the daughter of Hua Su and Zhenying Huang.

77. NYU Langone's medical records reflect a gestational age of 19 weeks and 5 days ('19+5') — understating Ms. Huang's actual term of twenty (20) completed weeks by at least two days. This discrepancy places Rebecca Su's death below the threshold for mandatory fetal death registration, cause-of-death documentation, and family notification under N.Y. Public Health Law § 4160. No Fetal Death Certificate, cause-of-death determination, or pathology report was provided to

Plaintiffs.

78.    NYU Langone's records reflect a Troponin blood draw at 2:00 a.m. — thirteen (13) minutes before the time recorded in the EMS Sprint Report as Ms. Huang's arrival — indicating alteration of either hospital records or EMS documentation.

## E.  October 28, 2023 — Morning: IAB Complaints, Retaliatory Seizure, Attempted Psychiatric Detention, False Intoxication Record, and Arson

### i. IAB Complaints

79.    At approximately 5:26 a.m. on October 28, 2023, Ms. Huang called 911 from NYU Langone Health Brooklyn to file a formal complaint against the 72nd Precinct for its deliberate failure to respond the prior evening and for the resulting escalation that caused Rebecca Su's death. The dispatcher escalated the complaint. No investigator ever contacted Plaintiffs. No report was produced.

80.    At approximately 5:40 a.m., Mr. Su contacted the NYPD Internal Affairs Bureau through 911. IAB Officer Louis A. Brevetti (Badge No.852) received the complaint. Mr. Su described: the Premises as a multi-family house, not an apartment; the Lian family's explicit death threat against Rebecca Su; the three 911 calls and their documented timestamps; the officers' refusal to enter the Premises; Officer Munassar's threat of arrest; and Rebecca Su's death. Officer Brevetti stated investigators would be assigned within hours and a written response provided within fourteen (14) days. No investigator was ever dispatched. No response was ever provided.

### ii. Retaliatory Response

81.    Within minutes of Mr. Su's IAB complaint, Minai Lian called 911 reporting that Mr. Su was acting 'crazy.' Officers responded within minutes — in direct contrast to the two-hour-plus delay during Plaintiffs' life-threatening emergency the prior evening. This disparity is documented in CAD Event No. D23102722531 and NYPD Sprint Report D23102818691.

82.    Officer Munassar — a named subject of the IAB complaint filed approximately twenty (20)

minutes earlier — entered the second floor and physically removed Mr. Su from his home to the street below, without lawful basis, warrant, or consent, fracturing Mr. Su's fingers in the process.

### iii. Attempted Involuntary Psychiatric Transport

83.    On the street outside 612 57th Street, Officers Munassar and Chen, with additional officers and FDNY EMS personnel, informed Mr. Su they intended to transport him involuntarily for psychiatric evaluation. The ambulance — the same vehicle and crew that had responded the prior evening — was parked at the curb. No mental health professional had examined Mr. Su. No clinical assessment had been conducted. No individualized danger determination had been made as required by N.Y. Mental Hygiene Law § 9.41. The officers' sole stated basis was Mr. Su's distress following the death of his unborn child hours earlier.

84.    Mr. Su refused transport and stated: 'My baby has died. If you want to take me, I must bring my daughter. I cannot leave her alone up there' — referring to three-year-old A.S., who was alone in the Premises with the Lian family. Mr. Su's statement was made in the presence of Officers Munassar, Chen, and additional officers and EMT personnel, and is documented in Plaintiffs' contemporaneous recordings.

85.    During this confrontation, Officer Chen observed Mr. Su was holding a personal body-worn camera. Officer Chen asked: 'What is that?' Mr. Su responded: 'It is an enforcement recorder. Don't you know what it is? You use yours — I use mine. Everything from last night until now has been recorded.' Plaintiffs' recorder captured: four (4) named NYPD officers including Munassar and Chen; two (2) FDNY EMS personnel; the ambulance summoned for the intended transport; and the officers' statements regarding transport. This recording is preserved in its original, unedited form in Plaintiffs' possession.

86.    Immediately upon discovery of the recording — and upon Mr. Su's statement that it captured the prior evening's events — the officers ceased the attempted psychiatric transport. The transport ceased not because of any change in Mr. Su's condition, but because officers discovered they were being recorded. The direct causal connection between discovery of the recording and abandonment of the attempted seizure constitutes circumstantial evidence that the officers knew the transport lacked lawful basis.

25

87.    The attempted transport is distinguishable from a lawful mental health referral: (a) no mental health professional assessed Mr. Su; (b) no individualized danger determination was made per N.Y. Mental Hygiene Law § 9.41; (c) it was initiated within twenty (20) minutes of Mr. Su filing an IAB complaint naming Officer Munassar, who personally participated; (d) Officer Munassar had the prior evening threatened to arrest Mr. Su for calling 911; and (e) it ceased immediately upon discovery of the recording, with no change in Mr. Su's condition.

### iv.  The False Intoxication Record

88.    On October 28, 2023, the same FDNY EMS crew and vehicle that had responded the prior evening returned to 612 57th Street in connection with Mr. Su's injuries. EMS personnel did not provide Mr. Su with a stretcher, requiring him to descend from the second floor and walk to the ambulance despite his injuries. Mr. Su was transported to NYU Langone Health Brooklyn for treatment. Upon admission, a nurse at NYU Langone falsely documented Mr. Su's condition in the intake record as indicating alcohol intoxication. No intoxication test of any kind was administered to Mr. Su. No clinical basis for this notation existed. This false notation — recorded in the intake record of the same hospital where Rebecca Su had died hours earlier — constitutes fabrication of a medical record that could be used to discredit Mr. Su's account of the October 27–28 events.

### v.  The Arson

89.    Following the abandonment of the psychiatric transport attempt, Mr. Su returned to the Premises. He overheard Qin Lin on a telephone call stating: 'The child died last night...' Upon noticing Mr. Su's return, Qin Lin deliberately turned the kitchen stove burner to a high setting and allowed the flame to go uncontrolled. A.S. was in the Premises. Mr. Su immediately called 911. FDNY firefighters responded and extinguished the fire. NYPD did not respond to this fire emergency 911 call. FDNY generated no arson referral and made no documentation of the fire's deliberate origin as reported by Mr. Su.

### vi.  Commanding Officer Suarez's Investigation

26

90. At approximately 8:00 a.m., Commanding Officer Krystin N. Suarez arrived at NYU Langone Health Brooklyn with four officers including Officer Lee. She: (a) denied Ms. Huang's request for an independent interpreter and designated Officer Chen — a named complaint subject — as sole translator for the investigation of his own conduct; (b) upon being informed Officer Lee had laughed at Rebecca Su's death, stated she had 'no authority to intervene in officer assignments'; and (c) promised two incident reports relating to the October 27–28 events. No such reports were ever provided. She concluded the investigation with a finding of 'no problems.'

### F.  October 28, 2023 — Afternoon and Evening: Continued Violence, Pesticide Attack, and False Arrest

#### i. Afternoon: Metoo and Ortega's Non-Response

91. Upon returning from NYU Langone Health Brooklyn on the afternoon of October 28, 2023, Ms. Huang — who had learned of Rebecca Su's death hours earlier — was subjected to verbal abuse and property destruction by the Lian family. All three Plaintiffs called 911 at 15:56:24, documented in NYPD Sprint Report D23102814804. The Sprint Report reflects: dispatch generated 16:09:33; first dispatch 16:24:59; logged arrival 16:42:08; second 911 call at 16:46:04; second logged arrival 16:46:10; third inquiry at 16:55:22 with no officers visible; actual appearance upstairs 17:16:10 only after Ms. Huang observed the patrol car below, brought A.S. downstairs, and physically flagged officers inside; departure 17:29:50. Plaintiffs accept these timestamps as accurate while reserving the right to contest certain narrative characterizations.

92. Officers Tracey R. Metoo (Badge No. 20090) and Nicholas A. Ortega (Badge No. 13565) entered at approximately 17:16. Officer Metoo did not address Ms. Huang — who had visible facial injuries, a hospital wristband, and IV dressings still in place — and instead engaged privately with Minai Lian in the hallway. Officers Metoo and Ortega departed at 17:29:50 without issuing any report, examining property damage, or taking statements from any of the three Plaintiffs.

#### ii. Evening: Pesticide Attack and False 911 Call

93. Within one hour of Officers Metoo and Ortega's departure, Minai Lian kicked the chair on

which Ms. Huang was seated while Ms. Huang held A.S. and fed her. Mr. Su was present. Caidong Lian then retrieved a can of insecticide and sprayed it directly over Plaintiffs' food — food that A.S. was actively being fed. Mr. Su entered the area. Upon seeing Mr. Su, Minai Lian jumped up with both feet and landed directly onto Mr. Su's right leg, then immediately walked away as if nothing had occurred and went to pour herself a glass of water. Minai Lian then moved behind Ms. Huang; when Ms. Huang turned toward her holding a vegetable, Minai Lian stepped into the path of the object and thereafter alleged she had been struck. Plaintiffs have video evidence of the insecticide spraying.

94.    At 19:22, Minai Lian called 911. Her description of the alleged assailant changed at least five times during a single call: 'Someone hit me with a pan'; 'He [Mr. Su] hit me with a pan'; 'No, it was the lady [Ms. Huang]'; 'He is the roommate'; 'The body is hurt, he hit my leg'; 'It was the female who hit me.' These contradictory statements are documented in Kings County Criminal Court Case No. CR-039674-23KN. This was Minai Lian's third 911 call within approximately twenty (20) hours — each generating a rapid NYPD response, contrasting sharply with the two-hour non-response to Plaintiffs' three calls the prior evening.

95.    Approximately twenty to thirty NYPD officers responded within minutes. Officer Metoo arrived among the first and greeted arriving colleagues at the entrance.

### iii.  The False Arrest of Ms. Huang

96.    Mr. Su was lying on the floor, injured. Sergeant Stephen Ennis (Badge No. 1186) disconnected Mr. Su's ongoing emergency medical call, told him he was 'fine,' and directed him to stand.

97.    Officers questioned Ms. Huang, who was seated with A.S. on her lap, still wearing her hospital wristband and IV dressings. Ms. Huang described the sequence: Minai Lian kicked Mr. Su; Caidong Lian sprayed insecticide over Plaintiffs' food; Minai Lian walked into Ms. Huang. Ms. Huang stated she had video evidence of the insecticide incident. She used the words 'self-defense' in describing her own actions.

98.    Officer Ortega received a phone call believed to be from a superior. Upon hearing 'self-

28

defense,' he ended the call abruptly, returned to Ms. Huang, instructed her to repeat her account, then ordered her to stand and placed handcuffs on her left wrist, lifting her arm forcibly upward. Officer Timothy J. Anderson (Badge No. 14012) assisted with the right wrist. No Miranda warnings were administered. Two male officers — Ortega and Anderson — searched Ms. Huang's person despite the presence of female officers. Lieutenant Herman Lai was present and personally signed the arrest authorization documents.

99.     Ms. Huang had returned to 612 57th Street from NYU Langone Health Brooklyn earlier that afternoon — still wearing her hospital wristband and with IV dressings in place — when, at approximately 19:22, she was placed in handcuffs and led from the unit. As Ms. Huang was led out — in a single thin garment, hospital wristband on her arm, IV dressings still in place — A.S. ran from the bedroom and threw herself onto Mr. Su, who was lying injured on the floor. A.S. cried: 'Why are they taking Mommy away? Why aren't they arresting the bad people?' Officer Kevin A. Ward (Badge No. 4828), who was present, visibly reacted with surprise at the arrest.

100.    After Ms. Huang was removed and all other officers had departed, Sergeant Ennis returned to the Premises together with one EMT personnel member. Upon returning, Sergeant Ennis kicked Mr. Su — who remained on the floor injured — and dragged him across the floor to a position near the stove. A.S. witnessed this. The EMT personnel member was present during Sergeant Ennis's assault on Mr. Su. Sergeant Ennis does not appear in the body-worn camera footage produced by Defendants despite his documented presence at the scene.

### iv. Ms. Huang's Detention — October 28 Through October 30

101.    Ms. Huang was transported to the 72nd Precinct and held overnight. She was given no food. She vomited repeatedly and received no medical attention despite her post-fetal-death condition. Officer Anderson prepared an intake document listing the charge as a felony and folded the document before handing it to Ms. Huang to conceal this classification.

102.    On October 29, 2023, at approximately noon, Officer Rashevskiy transported Ms. Huang to the Manhattan Detention Complex without informing her of the destination, and cut off Ms. Huang's hospital wristband prior to departure. An MDC intake officer found the wristband in Ms. Huang's pocket, prompting a brief delay. Ms. Huang was detained for over twenty-four (24) hours without assigned counsel.

103.    Sergeant Turowskii was present at the 72nd Precinct on October 29, 2023 when Mr. Su — accompanied by A.S. — sought information about Ms. Huang. Sergeant Turowskii falsely told Mr. Su that Ms. Huang remained at the 72nd Precinct when she had already been transferred to the MDC.

104.    On October 30, 2023, Legal Aid attorney Emily Popish appeared at Central Booking. Ms. Huang was required to sign an Order of Protection — barring her from the Premises — as a condition of release. The Premises contained all of Plaintiffs' possessions and was the residence of Mr. Su and A.S. Ms. Huang was released with only a handwritten note directing her to appear on December 14, 2023. No charging document, no copy of the Order of Protection, and no attorney contact information were provided.

### v. Eleven Charges and Grand Jury Proceedings

105.    Eleven (11) criminal charges were filed against Ms. Huang in Kings County Criminal Court Case No. CR-039674-23KN, including two (2) B Felony counts of Assault in the First Degree.

106.    During Grand Jury proceedings, attorney Popish's conduct was adverse to Plaintiffs' interests. On December 18, 2023, she received photographs of the insecticide spraying from Ms. Huang and thereafter collected and withheld them. On December 19, 2023, she directed Ms. Huang not to mention the FBI to the Grand Jury. During a recess, she attempted to take all of Plaintiffs' documentary materials.

107.    On December 22, 2023, the Grand Jury returned No True Bills on all eleven (11) counts — a complete favorable termination — as reflected in Kings County Criminal Court Case No. CR-039674-23KN, sealed under N.Y. CPL § 160.50. Attorney Popish withheld this result from Ms. Huang from December 22, 2023 until approximately January 18, 2024 — twenty-seven (27) days — despite Ms. Huang's repeated inquiries.

108.    On January 24, 2024, Mr. Su communicated to the CCRB in writing that Popish did not represent him. Ms. Huang sent written notice: 'Ms. Popish can't represent me, she didn't communicate with me.' Despite these notifications, the CCRB continued to treat Popish as Plaintiffs' representative and maintained that Ms. Huang's CCRB case could not proceed — a

30

position maintained after the Grand Jury had already returned No True Bills.

### G. Post-Arrest Events: October 28 — November 2, 2023

**i. November 1, 2023: Physical Assault on Mr. Su at the 72nd Precinct**

109.    On November 1, 2023, at approximately 2:00 p.m., Mr. Su went to the 72nd Precinct to file formal complaints and report ACS misconduct. Administrative aide Zhang Jinhui initially retrieved a complaint form, then — following consultation with Sergeant Turowskii and Deputy Inspector Tsang Mo. C — returned and refused to provide it, ignoring Mr. Su entirely.

110.    Officer Metoo returned from outside and, upon noticing Mr. Su, walked toward him and provocatively displayed her badge. Officer Rosado (Badge No. 18688) exited the precinct interior, observed Mr. Su recording his badge number, placed his equipment bag on the floor, deliberately removed his body-worn camera from his chest and placed it on the desk, and gestured for Mr. Su to follow him outside.

111.    Mr. Su retreated to a corner of the lobby. Officers Metoo, Rosado, and an unidentified male officer then exited from behind the reception desk. All three grabbed Mr. Su by the neck, applied chokehold-type pressure in violation of N.Y.C. Admin. Code § 14-177, lifted him off the ground with his feet leaving the floor, and expelled him from the precinct onto the public sidewalk. No charges were filed. The assault was not captured on body-worn camera because Officer Rosado had deliberately removed his device before engaging Mr. Su.

**ii. ACS Worker Reynoso**

112.    On October 30, 2023, ACS worker CPS Reynoso contacted Plaintiffs under the pretext of providing shelter assistance. On October 31, 2023, he discouraged Plaintiffs from filing formal complaints at NYPD headquarters; obtained Plaintiffs' hotel address; appeared with documents purporting to establish that both Plaintiffs were barred from the Premises; and attempted to physically approach A.S. without parental consent. Mr. Su blocked the approach and informed Reynoso the entire interaction was being recorded. Reynoso visibly perspired. He subsequently

contacted A.S.'s school to initiate a child abuse investigation that was not substantiated.

### iii. Ms. Huang's Surgery and Rebecca Su's Remains

113.    On November 2, 2023, Ms. Huang underwent surgery at Maimonides Health arising from complications related to the fetal death. Upon inquiring about Rebecca Su's remains, hospital staff informed Ms. Huang that the fetus was required to be disposed of under New York City Department of Health regulations, without informing Plaintiffs of any applicable rights, procedures, or appeals. Only Plaintiffs' explicit invocation of this pending federal proceeding caused staff to cease the disposal process at that time.

## H.  Evidence Destruction and Record Falsification

### i. False CCRB Official Finding

114.    CCRB Case No. 202310757 contains the official finding: 'No arrest made or summons issued' on October 28, 2023. This finding is directly and irreconcilably contradicted by: (a) Kings County Criminal Court Case No. CR-039674-23KN, documenting Ms. Huang's arrest and prosecution on eleven charges, sealed under N.Y. CPL § 160.50; (b) the CCRB's own report confirming body-worn camera evidence was collected from seven named officers at the October 28 incidents; and (c) CAD Event No. D23102722531. This false finding was issued after this litigation commenced, after City counsel had appeared, and after the City was under a legal duty to preserve all relevant evidence. See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003).

### ii. Edited Body-Worn Camera Footage

115.    The body-worn camera footage produced to Plaintiffs through attorney Popish on or about January 4, 2024 had been edited. As directly observed by Mr. Su upon first viewing on December 19, 2023: (a) Sergeant Ennis — personally present at 612 57th Street on October 28, 2023 and whose conduct is described in ¶100 above — does not appear in the footage, despite the CCRB's

confirmation that footage was collected from seven named officers; and (b) only one of the two waves of FDNY EMS personnel who responded appears in the footage, despite both waves being directly witnessed by Plaintiffs.

### iii. Fabricated CCRB Record — Sergeant Jack Liu

116.    CCRB Case No. 202310757 contains a reference to a complaint by Plaintiffs regarding Sergeant Jack Liu and a finding of full compliance. Plaintiffs never filed any complaint regarding Sergeant Jack Liu. The fabrication of a non-existent complaint — and a compliance finding for an officer never named by Plaintiffs — constitutes affirmative falsification of an official investigative record issued during the pendency of this litigation.

### iv. Scott Rosenberg — Litigation-Period Communications Interference

117.    Scott Rosenberg, Agency Attorney III, Legal Bureau — Body Worn Camera Unit, NYPD, communicated with Mr. Su regarding body-worn camera records. An email delivered from Rosenberg on January 28, 2024 was subsequently recalled months after delivery. An email from Rosenberg dated May 20, 2026 contained content that had been substituted from the original. Mr. Su's reply — including attached identification and payment documentation — subsequently disappeared entirely from Mr. Su's Gmail account. The recall of a delivered email, substitution of content, and disappearance of reply communications exceed the ordinary functions of email systems and constitute affirmative interference with Plaintiffs' communications during the pendency of this litigation.

### v. Missing 911 Recordings and Incident Reports

118.    Plaintiffs' three 911 calls on October 27, 2023 — documented in CAD Event No. D23102722531 at 22:28:56, approximately 23:00, and 23:54:42 — were recorded by the City's 911 system. These audio recordings have not been produced by Defendants. Their current status is unknown to Plaintiffs.

119.    Commanding Officer Suarez promised Ms. Huang two incident reports relating to the October 27–28 events. No such reports were ever provided. Plaintiffs' FOIL request for the December 21, 2022 records was unsuccessful; related communications were subsequently recalled or disappeared.

### vi.  Officer Rosado's Pre-Assault Camera Removal

120.    On November 1, 2023, Officer Rosado deliberately removed his body-worn camera from his chest and placed it on the precinct desk immediately before participating in the physical assault on Mr. Su described in ¶111, eliminating the body-worn camera record of his own assault.

## I.  Municipal Customs, Practices, and Deliberate Indifference

121.    The constitutional violations suffered by Plaintiffs were not the product of isolated individual misconduct. They resulted from — and were caused by — the City of New York's affirmative policies, entrenched customs, and deliberate indifference to the need to train, supervise, and discipline NYPD officers. The following paragraphs identify, with specificity, the customs and practices that were the moving force behind each constitutional deprivation suffered by Plaintiffs.

### i.  Custom of Non-Response and Systematic Downgrading

122.    From December 21, 2022 through October 28, 2023 — ten continuous months — NYPD officers responding to 612 57th Street consistently characterized documented criminal assaults as domestic disputes or landlord-tenant matters, directed Plaintiffs to the landlord, departed without Complaint Reports, and made no referrals for investigation or arrest. This pattern involved:

(a)    Officer Awawdeh (Badge No. 135) — December 21, 2022: terminated interpreter; directed report to attacker; issued no report;

(b)    Sergeant Turowskii (Badge No. 3139) — December 21, 2022: released attacker

without arrest; no victim statement; no report;

(c)    Officer Du (Badge No. 14727) — February through November 2023: confirmed assault on footage; took no action; connected attacker's landlord to police contact; directed Plaintiffs to leave the country;

(d)    Officers Tan (Badge No. 25453) and Emeh (Badge No. 31307) — February 2023: witnessed physical resistance and explicit announcement of continued intent to attack; departed without action;

(e)    Officer Munassar (Badge No. 4980) — August 24, October 16, October 27–28, and October 28, 2023: on each occasion refused to report, characterized assaults as landlord matters, threatened the victim, protected the perpetrators;

(f)    Officers Metoo (Badge No. 20090) and Ortega (Badge No. 13565) — October 28, 2023 afternoon: ignored visible injuries; engaged privately with attacker; departed without report; returned within one hour to arrest the victim.

123.    The recurrence of identical conduct across six distinct officers responding independently to the same address over ten months is inconsistent with individual deviation and constitutes direct evidence of a municipal custom. See Jones v. Town of E. Haven, 691 F.3d 72 (2d Cir. 2012).

124.    The existence of this custom is confirmed by two direct admissions by NYPD personnel, both documented in Plaintiffs' contemporaneous recordings:

(a)    October 23, 2023 — Qin Lin stated to all three Plaintiffs: 'The police will not come. I know. We have been to the precinct. They told us they won't deal with this.' Caidong Lian confirmed: 'The police won't come — the police won't manage this matter, understood?' These statements establish that 72nd Precinct personnel communicated in advance to the perpetrators that officers would not respond — a pre-emptive authorization of ongoing criminal conduct. This is a verbal act establishing perpetrators' state of mind and reliance on police non-response as a shield, not hearsay.

(b)    November 3, 2023 — Officer Du stated directly to Mr. Su: 'You don't understand — police officers have the right, after receiving a 911 call, to not go to the scene. They can

just drive around the area.' This statement by an active NYPD officer describing his department's own response standard reflects either a formal training position or an entrenched culture normalizing non-response. Either basis satisfies deliberate indifference under Connick v. Thompson, 563 U.S. 51 (2011).

125.    The practical consequence of this custom on October 27–28, 2023 was direct and lethal. Three 911 calls over more than two hours — reporting an active assault, a pregnant victim, a three-year-old child, and an explicit death threat against the unborn child — generated a two-hour non-response. Officers who confirmed familiarity with the call history refused to enter the Premises, threatened arrest for calling again, blocked a fellow officer from providing documentation for a protective order, and assured the perpetrators of protection. Rebecca Su died at approximately 3:00 a.m. on October 28, 2023, at twenty (20) weeks of gestation.

### ii.  Custom of Retaliation Against Complainants

126.    Within minutes of Plaintiffs' IAB complaint at 5:40 a.m. on October 28, 2023, Officer Munassar — a named subject of that complaint — physically removed Mr. Su from his home without lawful basis, fracturing his fingers, and attempted to have him involuntarily committed. Within hours, Ms. Huang was arrested on eleven charges unanimously rejected by a Grand Jury. On November 1, 2023, Officer Rosado stated 'I will not change my colleague's report' before examining anything, then removed his body-worn camera and participated in a physical assault on Mr. Su inside the precinct. On November 3, 2023, Officer Du directed Mr. Su to abandon his lawsuits and leave the country. The temporal and substantive connections between Plaintiffs' protected activity — filing IAB and CCRB complaints — and the adverse actions taken against them establish a custom of retaliation. See Nieves v. Bartlett, 587 U.S. 391 (2019).

### iii.  Custom of Evidence Destruction and Record Falsification

127.    The City maintains a custom of destroying, editing, and fabricating evidence to conceal constitutional violations: (a) the false CCRB finding of 'no arrest made,' irreconcilable with the sealed court record, CCRB's own documentation of collected body-worn camera footage, and the

36

CAD dispatch record; (b) body-worn camera footage edited to remove Sergeant Ennis and one wave of FDNY EMS responders; (c) Officer Rosado's deliberate pre-assault camera removal; (d) NYPD Legal Bureau attorney Rosenberg's recall and substitution of emails during this litigation; (e) non-production of three 911 recordings documented in CAD Event No. D23102722531; and (f) fabrication of a CCRB complaint record regarding Sergeant Jack Liu — an officer Plaintiffs never named — accompanied by a finding of full compliance. These acts constitute spoliation under Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003).

### iv. Failure to Train

128.    The conduct of Officers Munassar, Lee, Chen, Ortega, Metoo, Anderson, Rosado, Ennis, and Turowskii demonstrates systemic training deficiencies regarding: (a) mandatory response obligations to reported criminal assaults; (b) probable cause requirements for arrest; (c) Miranda warning requirements; (d) gender-appropriate search procedures; (e) chokehold prohibition under N.Y.C. Admin. Code § 14-177; (f) medical obligations to detainees in physical distress; (g) body-worn camera activation and preservation under NYPD Patrol Guide § 212-123; and (h) prohibition on retaliation against complainants. The City's deliberate indifference is evidenced by the CCRB's imposition of Formalized Training — the minimum sanction — as the sole consequence for misconduct resulting in the death of an unborn child, a false B Felony prosecution rejected in its entirety by a Grand Jury, and a physical assault on a complainant inside a police precinct. See Connick v. Thompson, 563 U.S. 51, 61 (2011).

### v. Failure to Supervise and Discipline

129.    The following supervisory personnel directly participated in, authorized, or ratified the constitutional violations described herein: (a) Lieutenant Lai personally authorized Ms. Huang's arrest on eleven charges subsequently rejected in their entirety; (b) Commanding Officer Suarez personally used a named complaint subject as sole translator in his own investigation, declined to act when Officer Lee laughed at Rebecca Su's death, promised reports never produced, and personally directed the refusal of Plaintiffs' 2024 theft complaint despite video evidence; (c) Sergeant Turowskii released the December 21, 2022 attacker without arrest, made false

37

representations regarding Ms. Huang's detention, and took no action when Mr. Su was denied complaint forms; (d) Sergeant Ennis returned to 612 57th Street after other officers departed, kicked the injured Mr. Su, and does not appear in produced body-worn camera footage; and (e) Deputy Inspector Tsang Mo. C authorized through direct communication the denial of complaint forms to Mr. Su on November 1, 2023. See Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995).

### vi. Ratification

130.    By issuing CCRB Case No. 202310757 with a finding of 'no arrest made' — directly contradicted by the sealed Kings County court record, the CCRB's own documentation of body-worn camera collection, and the CAD dispatch record — the City ratified the constitutional violations committed by its officers. This false official finding was issued after this litigation commenced, after City counsel had appeared, and after the City was under a legal duty to preserve all relevant evidence. The City's ratification through false findings, suppression of evidence, minimum sanctions, and litigation-period fabrication is the direct and proximate cause of the ongoing constitutional deprivations suffered by Plaintiffs.

### — END OF FACTUAL ALLEGATIONS —

### CAUSES OF ACTION

131.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

132.    At all times relevant herein, each individual Defendant named in the Claims below was acting under color of state law within the meaning of 42 U.S.C. § 1983.

**CLAIM ONE — Unreasonable Seizure — False Arrest**
**Fourth and Fourteenth Amendments / 42 U.S.C. § 1983**
**Against: Officers Ortega, Anderson, Lee, Metoo, Ennis, and Lieutenant Lai**

133.   Plaintiff Ms. Huang had a clearly established constitutional right under the Fourth Amendment to be free from arrest without probable cause.

134.   On October 28, 2023, Defendants Ortega, Anderson, Metoo, and Ennis arrested Ms. Huang without probable cause. Ms. Huang had neither struck Minai Lian with a pan nor committed any other criminal act. Minai Lian's own 911 call — during which her description of the assailant changed at least five times — did not establish probable cause. No independent investigation was conducted. Lieutenant Lai personally authorized the arrest.

135.   The Grand Jury's return of No True Bills on all eleven (11) counts on December 22, 2023, as reflected in Kings County Criminal Court Case No. CR-039674-23KN, sealed under N.Y. CPL § 160.50, constitutes a favorable termination supporting this claim.

136.   As a direct and proximate result of this unlawful arrest, Ms. Huang suffered: unlawful detention without food or medical care; transfer to the Manhattan Detention Complex without notice; detention for over forty-eight (48) hours in total while in post-fetal-death physical distress; compelled execution of an Order of Protection barring her from her own residence; forced separation from her three-year-old daughter and injured husband; deprivation of timely surgery; public humiliation; and severe emotional distress.

**CLAIM TWO — Unreasonable Seizure — Unlawful Removal and Attempted Involuntary Psychiatric Transport**
**Fourth Amendment / 42 U.S.C. § 1983**
**Against: Officers Munassar and Chen**

137.   On October 28, 2023, Officer Munassar physically removed Mr. Su from his home without warrant, without consent, and without lawful basis, fracturing Mr. Su's fingers. Officers Munassar and Chen then attempted to transport Mr. Su involuntarily for psychiatric evaluation without any medical assessment, without any individualized danger determination as required by N.Y. Mental Hygiene Law § 9.41, and without judicial authorization. The attempt was abandoned only upon discovery of Plaintiffs' recording. Officer Munassar was a named subject of the IAB complaint filed approximately twenty (20) minutes before he removed Mr. Su from his home — independently supporting retaliatory motive.

138.   As a direct and proximate result, Mr. Su suffered: fractured fingers; unlawful removal from his home while A.S. was inside with the perpetrators; deprivation of his liberty interest in remaining in his own home; and severe emotional distress.

**CLAIM THREE — Excessive Force**
**Fourth Amendment / 42 U.S.C. § 1983**
**Against: Officers Munassar, Ennis, Metoo, Rosado, and Doe Officers**

139.   Officer Munassar used unreasonable force in removing Mr. Su from the Premises on October 28, 2023, fracturing his fingers. Sergeant Ennis returned to the Premises after all other officers had departed, kicked Mr. Su while he was lying injured on the floor, and dragged him across the floor — objectively unreasonable against a person already injured. On November 1, 2023, Officers Metoo, Rosado, and a Doe officer applied chokehold-type pressure to Mr. Su's neck inside the 72nd Precinct, lifted him off the ground, and expelled him onto the sidewalk, in violation of N.Y.C. Admin. Code § 14-177. No lawful basis for any use of force against Mr. Su existed at any of these times.

140.   As a direct and proximate result, Mr. Su suffered: fractured fingers; injuries from being kicked and dragged while already injured; physical injury from the November 1 chokehold; and severe and lasting emotional distress.

**CLAIM FOUR — Deliberate Indifference — Denial of Medical Care to Detainee**
**Fourteenth Amendment / 42 U.S.C. § 1983**
**Against: Officers Anderson, Rashevskiy, and Doe Officers**

141.   As a pretrial detainee, Ms. Huang had a clearly established Fourteenth Amendment right to adequate medical care. At the time of her detention, her serious medical condition was objectively apparent: hospital wristband on her arm; IV dressings in place; discharged that day following a fetal death at twenty weeks; repeated vomiting throughout the night. Defendants failed to provide food for approximately twenty hours; failed to provide medical evaluation despite repeated vomiting; failed to permit adequate toilet access; and transferred Ms. Huang to the MDC without disclosing her medical status. Officer Rashevskiy cut off Ms. Huang's hospital wristband prior to

transfer.

142.   As a direct and proximate result, Ms. Huang suffered: aggravated physical distress from unaddressed post-fetal-death complications; physical injury from vomiting without medical attention; and severe emotional distress.

**CLAIM FIVE — Equal Protection — Discriminatory Non-Response**
**Fourteenth Amendment / 42 U.S.C. § 1983**
**Against: Officers Munassar, Lee, Chen, Awawdeh, Du, Metoo,**
**Ortega, and the City of New York**

143.   Defendants' deliberate non-response to Plaintiffs' more than thirty (30) 911 calls over ten months, while responding rapidly and in force to each of Minai Lian's calls, reflects discriminatory treatment based on Plaintiffs' identity as Chinese-speaking immigrant tenants without institutional connections, in violation of the Equal Protection Clause. The discriminatory nature is evidenced by: (a) the two-hour-plus delay on October 27–28, 2023 contrasted with within-minutes response to each of Minai Lian's calls on the same date; (b) Officer Du's advice to abandon litigation and leave the country; (c) Officer Chen's characterization of a ten-month pattern of criminal assaults as a 'domestic dispute'; and (d) 72nd Precinct personnel's advance communication to the perpetrators that police would not respond.

**CLAIM SIX — First Amendment Retaliation**
**42 U.S.C. § 1983**
**Against: Officers Munassar, Chen, Rosado, Metoo, and Du**

144.   Defendants retaliated against Plaintiffs for filing IAB, CCRB, and civil complaints — a clearly established First Amendment right to petition the government for redress of grievances — through: (a) Officer Munassar's physical removal of Mr. Su from his home within twenty (20) minutes of the IAB complaint naming him; (b) Ms. Huang's arrest on eleven charges unanimously rejected by a Grand Jury, within hours of the IAB complaints; (c) Officer Rosado's statement 'I will not change my colleague's report' before any examination, followed by deliberate camera removal and assault on Mr. Su; (d) Officers Metoo, Rosado, and Doe officer's chokehold and expulsion of Mr. Su from the 72nd Precinct when he sought to file formal complaints; and (e)

41

Officer Du's direction to Mr. Su to abandon his lawsuits and leave the country. See Nieves v. Bartlett, 587 U.S. 391 (2019).

### CLAIM SEVEN — State-Created Danger — Death of Rebecca Su
### Fourteenth Amendment / 42 U.S.C. § 1983
### Against: Officers Munassar, Lee, Chen, and the City of New York

145.   Defendants created or substantially increased the danger to Rebecca Su through affirmative acts rendering her more vulnerable than in the absence of official conduct. See DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189 (1989); Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008). The affirmative acts include: (a) Officer Munassar's threat to arrest Ms. Huang if she called 911 again — made in the perpetrators' presence and deterring further calls while contractions were beginning; (b) Officer Lee's physical intervention blocking the provision of information needed for an Order of Protection — affirmatively preventing the legal mechanism available to protect Rebecca Su; (c) Officer Munassar's assurances to the Lian family of 'protection' — emboldening continued criminal conduct; and (d) 72nd Precinct personnel's advance communication to Qin Lin that police would not respond — affirmatively enabling the October 27, 2023 assault without fear of intervention.

146.   As a direct and proximate result of these affirmative acts, Rebecca Su died at NYU Langone Health Brooklyn at approximately 3:00 a.m. on October 28, 2023, at twenty (20) weeks of gestation. The Estate of Rebecca Su brings this claim for all damages available under federal law and N.Y. EPTL §§ 5-4.1 and 11-3.2.

### CLAIM EIGHT — Monell Municipal Liability
### 42 U.S.C. § 1983
### Against: City of New York

147.   The City of New York is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), because the constitutional violations suffered by Plaintiffs were caused by the City's policies, customs, and practices, and by the City's deliberate indifference to training, supervision, and discipline needs, as detailed in Section I of the Factual Allegations above. The City's liability

is established under four independent theories: (a) custom of non-response and systematic downgrading (¶¶122–125); (b) custom of retaliation against complainants (¶126); (c) custom of evidence destruction and record falsification (¶127); and (d) deliberate indifference to training, supervision, and discipline (¶¶128–130).

## CLAIM NINE — Malicious Prosecution
**Fourth and Fourteenth Amendments / 42 U.S.C. § 1983**
**State Law — N.Y. Common Law**
**Against: Officers Ortega, Anderson, Metoo, Ennis, and Lieutenant Lai**

148.   Defendants initiated a criminal prosecution against Ms. Huang by arresting her without probable cause and presenting eleven charges — including two B Felony counts — to the Kings County District Attorney. The prosecution terminated in Ms. Huang's favor on December 22, 2023, when the Grand Jury returned No True Bills on all eleven counts, sealed under N.Y. CPL § 160.50. Defendants acted with actual malice: the arrest occurred within hours of Ms. Huang filing an IAB complaint; was based on a 911 call whose description changed five times; was made without any investigation of Plaintiffs' account; without Miranda warnings; through a search by male officers; and while Ms. Huang wore her hospital wristband hours after her unborn child's death. As a result, Ms. Huang suffered forty-eight (48) hours of unlawful detention; compelled separation from her residence, daughter, and husband; deprivation of timely surgery; and severe and lasting emotional distress.

## CLAIM TEN — Failure to Intervene
**42 U.S.C. § 1983**
**Against: All Officer Defendants Present During Constitutional Violations**

149.   Each officer present during the constitutional violations described herein — including the false arrest of Ms. Huang, the unlawful seizure and attempted psychiatric transport of Mr. Su, the excessive force incidents, and the November 1 precinct assault — had a duty and realistic opportunity to intervene to prevent the violation of Plaintiffs' constitutional rights and failed to do so. Officer Ward, who visibly reacted with surprise at Ms. Huang's arrest, failed to intervene despite his awareness that the arrest lacked adequate basis. As a direct and proximate result,

Plaintiffs suffered all damages described in connection with the underlying violations.

## CLAIM ELEVEN — Conspiracy to Deprive Constitutional Rights
## 42 U.S.C. §§ 1983 and 1985(3)
## Against: Officers Munassar, Lee, Chen, Metoo, Ortega, Rosado, Ennis,
## Du, Awawdeh, Rashevskiy, Turowskii, Suarez, Lai,
## CCRB, ACS/Reynoso, and the City of New York

150. Defendants engaged in a conspiracy to deprive Plaintiffs of their constitutional rights, evidenced by: (a) 72nd Precinct personnel's advance communication to Qin Lin that police would not respond to Plaintiffs' calls — establishing coordination between NYPD and the perpetrators; (b) Officer Lee's physical intervention to block Officer Chen from providing information to Plaintiffs; (c) the coordinated mass response to Minai Lian's October 28, 2023 evening call contrasted with non-response to Plaintiffs' calls; (d) Commanding Officer Suarez's conduct of the IAB investigation using a complaint subject as translator, concluding 'no problems'; (e) the CCRB's post-litigation issuance of a false 'no arrest made' finding and fabrication of the Jack Liu complaint record; and (f) ACS worker Reynoso's coordination with NYPD to obstruct Plaintiffs' access to complaint processes and initiate an unsubstantiated child abuse investigation.

## CLAIM TWELVE — Assault and Battery — State Law
## N.Y. Common Law
## Against: Officers Munassar, Ortega, Anderson, Rosado, Metoo, Ennis,
## and Doe Officers

151. Defendants committed assault and battery against Mr. Su through: Officer Munassar's forcible removal, fracturing his fingers; Sergeant Ennis's kicking and dragging of Mr. Su on October 28, 2023; and Officers Metoo, Rosado, and Doe officers' chokehold and forcible expulsion from the 72nd Precinct on November 1, 2023. Defendants committed assault and battery against Ms. Huang through Officers Ortega and Anderson's forcible placement of handcuffs — including Ortega's forcible upward lifting of Ms. Huang's arm — and through the unauthorized physical search of Ms. Huang's person by two male officers. As a direct and proximate result, Plaintiffs suffered physical injury, pain, and emotional distress.

44

**CLAIM THIRTEEN — Intentional Infliction of Emotional Distress — State Law**
**N.Y. Common Law**
**Against: Officers Munassar, Lee, Chen, Ortega, Metoo, Rosado,**
**Ennis, Du, and Commanding Officer Suarez**

152.    Defendants engaged in extreme and outrageous conduct exceeding all reasonable bounds of decency, including: (a) threatening to arrest Ms. Huang for calling 911 while she was in the street after midnight, in contractions, after reporting an assault and death threat against her unborn child; (b) physically blocking the provision of information needed for a protective order when that order could have protected Rebecca Su; (c) arresting Ms. Huang in her hospital wristband, less than twelve (12) hours after Rebecca Su's death, in front of A.S.; (d) attempting to have Mr. Su involuntarily committed within hours of his unborn child's death, without any medical basis, ceasing only when his recording was discovered; (e) Officer Lee laughing upon being informed of Rebecca Su's death; and (f) Commanding Officer Suarez conducting a sham investigation using a complaint subject as translator and concluding 'no problems.' These acts were done with knowledge of, or reckless disregard for, the severe emotional distress they would cause. As a direct and proximate result, each Plaintiff suffered severe and lasting emotional distress.

**CLAIM FOURTEEN — Negligence and Wrongful Death — State Law**
**N.Y. Common Law / N.Y. EPTL §§ 5-4.1 and 11-3.2**
**Against: Officers Munassar, Lee, Chen, and the City of New York**
**On behalf of: Estate of Rebecca Su; Plaintiffs Mr. Su and Ms. Huang**

153.    Defendants owed a duty of care to Plaintiffs, including to Rebecca Su. On October 27–28, 2023, Defendants breached that duty by deliberately failing to respond to three 911 calls over more than two hours; threatening the victims; blocking access to legal protection; and assuring the perpetrators. These breaches directly and proximately caused Rebecca Su's death. The Estate brings wrongful death claims under N.Y. EPTL § 5-4.1 and survival claims under N.Y. EPTL § 11-3.2. Plaintiffs Mr. Su and Ms. Huang separately bring claims for grief, loss of expected companionship, and severe and lasting emotional harm resulting from the death of their child.

45

**CLAIM FIFTEEN — Violation of N.Y. Public Health Law § 4160**
**Against: NYU Langone Health Brooklyn**

154.    NYU Langone recorded Ms. Huang's gestational age as 19 weeks and 5 days when her actual term was twenty (20) completed weeks, placing Rebecca Su's death below the threshold for mandatory fetal death registration under N.Y. Public Health Law § 4160. As a result, NYU Langone: failed to issue a Fetal Death Certificate; failed to document the cause of death; failed to provide Plaintiffs with a pathology report; and sought to dispose of Rebecca Su's remains without informing Plaintiffs of their statutory rights. Additionally, records reflecting a Troponin blood draw thirteen (13) minutes before the EMS-recorded arrival time indicate alteration of either hospital or EMS records. As a result, Plaintiffs have been deprived of legal documentation of Rebecca Su's death, the ability to pursue all available legal claims arising from that death, and the right to make informed decisions regarding Rebecca Su's remains.


**CLAIM SIXTEEN — Spoliation of Evidence and Obstruction**
**Against: City of New York, CCRB, and Scott Rosenberg**

155.    Defendants breached their duty to preserve all evidence relevant to Plaintiffs' claims by: (a) editing body-worn camera footage to remove Sergeant Ennis and one wave of FDNY EMS responders; (b) issuing a false CCRB finding of 'no arrest made' directly contradicted by the court record; (c) failing to produce three 911 recordings documented in CAD Event No. D23102722531; (d) recalling and substituting emails regarding body-worn camera evidence during this litigation; and (e) fabricating a CCRB record regarding Sergeant Jack Liu. These acts have prejudiced Plaintiffs' ability to fully present their claims. Plaintiffs seek all available sanctions and adverse inference instructions. See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003); West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Hua Su, Zhenying Huang, A.S. (by Next Friends), the Estate of Rebecca Su (by Administrator Hua Su), and AD.S (by Next Friends) respectfully demand judgment against Defendants, jointly and severally where applicable, as follows:

46

## I. Compensatory Damages

156.    Compensatory damages for Plaintiff Hua Su for: physical injuries including fractured fingers; pain and suffering; emotional distress; the death of his unborn daughter Rebecca Su; the false arrest attempt and attempted involuntary psychiatric commitment; assault and battery; displacement from his home; loss of property; lost income; and all other injuries described herein.

157.    Compensatory damages for Plaintiff Zhenying Huang for: the death of Rebecca Su; false arrest and malicious prosecution on eleven criminal charges; unlawful detention for over forty-eight (48) hours without food or medical care while in post-fetal-death physical distress; deprivation of timely surgery; assault; severe emotional distress; displacement from her home; loss of property; and all other injuries described herein.

158.    Compensatory damages for Plaintiff A.S. for: being the direct target of multiple physical attacks, including the December 21, 2022 assault and the February 11, 2023 skillet attack; psychological trauma from witnessing repeated violence against her parents; witnessing the handcuffing and arrest of her mother; being left alone with the perpetrators on multiple occasions; forced withdrawal from school for approximately two years; and displacement across multiple states.

159.    Compensatory damages on behalf of the Estate of Rebecca Su for: the wrongful death of Rebecca Su at twenty (20) weeks of gestation on October 28, 2023, caused by Defendants' deliberate non-response to three 911 calls reporting an active assault and explicit death threat against her; all pecuniary losses suffered by the distributees of the estate; and all survival damages available under N.Y. EPTL §§ 5-4.1 and 11-3.2.

160.    Compensatory damages for Plaintiff AD.S for: deprivation of stable housing and education since birth; displacement across multiple states resulting from Defendants' continuing conduct; and all other harm flowing from the destruction of the family environment caused by Defendants' actions.

## II. Punitive Damages

161.    Punitive damages against each individual Defendant in an amount sufficient to deter future similar conduct, based on: Officer Munassar's threat to arrest Ms. Huang for calling 911 and his retaliatory seizure of Mr. Su within minutes of an IAB complaint naming him; Officer Lee's physical intervention to deny Plaintiffs a protective order for their unborn child, and his laughing upon learning of Rebecca Su's death; Officer Rosado's deliberate removal of his body-worn camera before assaulting Mr. Su; Sergeant Ennis's return to the scene to kick and drag the injured Mr. Su after all other officers had departed; FDNY EMS personnel's false intoxication notation prepared by the same crew present when Rebecca Su died; and NYPD's Legal Bureau attorney's recall, substitution, and deletion of evidence-related communications during the pendency of this litigation.

### III.  Injunctive and Declaratory Relief

162.    A declaration that Defendants' conduct as described herein violated the First, Fourth, and Fourteenth Amendments to the United States Constitution.

163.    Injunctive relief requiring the City of New York to: (a) produce all unedited body-worn camera footage from the October 27–28 and October 28–29, 2023 incidents at 612 57th Street; (b) produce all 911 audio recordings associated with CAD Event No. D23102722531; (c) produce all NYPD Sprint Reports and dispatch records relating to 612 57th Street from October 2022 through November 2023; and (d) correct the false finding in CCRB Case No. 202310757.

164.    An order requiring NYU Langone Health Brooklyn to: (a) correct Ms. Huang's gestational age record to reflect twenty (20) completed weeks; (b) issue all documentation required by N.Y. Public Health Law § 4160; and (c) preserve all records relating to Ms. Huang's October 28, 2023 admission.

### IV.  Evidence Sanctions

165.    Adverse inference instructions at trial against the City of New York and the CCRB for: the editing of body-worn camera footage to remove Sergeant Ennis and one wave of FDNY EMS responders; the non-production of 911 recordings documented in CAD Event No. D23102722531;

the recall and substitution of NYPD Legal Bureau emails regarding body-worn camera evidence; and the fabrication of CCRB records during the pendency of this litigation.

## V. Attorneys' Fees and Costs

166.    An award of attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable provision.

## VI. Such Other and Further Relief

167.    Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Dated: June 9, 2026

Respectfully submitted,

*Hua Su*

Hua Su, Plaintiff Pro Se
As Administrator of the Estate of Rebecca Su
As Next Friend of A.S. and AD.S

*Zhenying Huang*

Zhenying Huang, Plaintiff Pro Se
As Next Friend of A.S. and AD.S

Address:   16 Arlington Street Newark, DE19711

Telephone: 302-696-9318

Email:    redsun8century@gmai.com

## — END OF SECOND AMENDED COMPLAINT —

*Su et al. v. City of New York et al., No. 25-CV-00477 (AMD)(PK)  |  16 Claims  |  ¶¶ 1–167*